# Waugh *versus* Beck.

1. A transaction in stocks, grain, oil or other commodities by way of margin, settlement of differences, and payment of gain or loss, without intending to deliver the commodities sold, is a wagering or gambling transaction, and although not prohibited by statute is unlawful in this state.

2. One who knowingly and with the purpose of furthering a gambling transaction in purchasing commodities on margin lends money to another, cannot recover it. It being unlawful for one man to pay, it cannot be lawful for another to furnish him the means of paying.

3. It is not enough to defeat recovery by the lender, that he knew of the borrower's intention to use it in a gambling transaction, in purchasing commodities on margin; he must have known that the borrower was purposing such use of the loan and must have been implicated as a confederate in the transaction though not necessarily for gain.

October 15th, 1886. Before GORDON, PAXSON, TRUNKEY and STERRETT, JJ. MERCUR, C. J., GREEN and CLARK, JJ. absent.

ERROR to the Court of Common Pleas of *Mercer county:* Of October Term 1886, No. 173.

This was a feigned issue wherein William Waugh was plaintiff and Nicholas Beck was defendant.

The following are the facts as they appeared on the trial:

Some time in the month of August, 1884, the defendant Beck applied to the plaintiff, to loan or advance him some money for the purpose of purchasing some oil, stating at the same time that his friend, J. C. Cornwell, would advance him a like amount for the same purpose, and that Mr. Cornwell would take control of and manage the purchase of the oil.

Some days after this Mr. Cornwell with Mr. Beck called on Mr. Waugh, when, after some conversation between the parties and after Mr. Cornwell had informed Mr. Waugh that he was willing to loan his friend, Mr. Beck, some money, Mr. Waugh agreed to advance or loan Mr. Beck a sum of money not exceeding one thousand dollars ($1,000) when called upon.

[Waugh v. Beck.]

In pursuance of this arrangement Mr. Cornwell, through his broker, Mr. Lamberton, of Oil City, drew on Mr. Waugh for five hundred dollars ($500). Mr. Waugh informed Mr. Beck of the draft and called on him for his note for the same before he would honor it. Mr. Beck then, on the 8th of August, 1884, gave Mr. Waugh his promissory judgment exemption note at one day for the amount of the draft, to wit, $500, and Mr. Waugh the next day remitted the amount, per express, to Mr. Cornwell's broker. A few days subsequent thereto Mr. Beck called on Mr. Waugh and requested a further loan of $500, and on September 6th, 1884, he gave his promissory judgment exemption note at one day for the sum of $500. Mr. Waugh then, according to the direction of Mr. Beck, remitted the amount, per draft, to Mr. Cornwell's broker. These two notes were entered respectively at Nos. 446 and 447 September Term, 1884.

On September 21st, 1885, on the petition of the defendant, Nicholas Beck, a rule to show cause was granted why these judgments should not be opened, and, after answer and argument, his Honor opened the judgments and directed an issue to try the following facts, to wit: (1) "Whether the notes on which these two judgments are based were given as part of a gambling transaction, in which the plaintiff and defendant were engaged for their mutual gain; or (2) whether the plaintiff furnished the money which formed the consideration of the said notes for the benefit of the defendant, but knowingly and with the purpose of furthering a gambling transaction."

In the general charge the court instructed the jury, *inter alia*, as follows:

The serious legal question arises under the second part of the issue.

The learned counsel for the plaintiff have most ably argued that even though the facts involved in this part of the issue be found in favor of the defendant, still the plaintiff can recover the money represented by these notes." With this position, however, we cannot agree, and we therefore instruct you that if the plaintiff furnished the money represented by these notes knowingly and with the purpose of furthering a gambling transaction, as above explained, then your verdict must be for the defendant, even though Judge Waugh, the plaintiff, had no interest in the expected profits of the transaction. (First assignment of error.)

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

Secondly. The turning point in the case is as to Judge Waugh's knowledge of what was to be done with the first sum of money, for if he knew what was to be done with the first

he knew what was to be done with the second, for it was all part of the same transaction, and that is not a matter in dispute. It seems to me that if it be an established principle of law, as it is, that a contract made as part of a gambling transaction is unlawful as against good morals, it follows that all parts of the transaction are unlawful. (Second assignment of error.)

\*   \*   \*   \*   \*   \*   \*

" The test as to whether or not Judge Waugh in this matter is entitled to recover, is to my mind the same test that would be applied if this gambling transaction were a misdemeanor or felony. If it were a misdemeanor, would the facts alleged by the defendant make him a principal? If a felony, would the facts alleged by the defendant make him an accomplice? (Third assignment of error.)

\*   \*   \*   \*   \*   \*   \*   \*

The burden of proof in this issue is upon the defendant. It is for him to show by the weight of the evidence that Judge Waugh knew that this was being used for the purchase of oil upon margins. You will take all the evidence in the case and conclude whether he did know that fact. (Fourth assignment of error.)

The plaintiff presented, *inter alia*, the following point:

2. That if the jury believe, from the evidence, that the plaintiff loaned the money which formed the consideration of the notes for the benefit of the defendant, and although he knew the money was to be used in buying oil on margins, still the plaintiff can recover, and the verdict should be for the plaintiff.

Answer. Simple knowledge by the lender of money that the borrower was likely to, or was going to, use it in gambling might not be enough to prevent a recovery of the money loaned, but if the plaintiff paid this money to Mr. Lamberton, the oil broker, in accordance with an arrangement made between himself and Mr. Cornwell, and if he knew that this money was to be used for the purchase of oil on margins, he could not recover. Therefore, so far as this case is concerned, this request is refused. There is one matter in this request that has been left indefinite. I presume the time of the knowledge, of course, is meant to apply to the time of the loaning of the money. Of course, if Judge Waugh did not know at the time the money was loaned and the notes were given that this money was to be used in a gambling transaction, but learned that afterwards, he would not be bound by that subsequent knowledge. The question is, what did he know at the time when these notes were given.

[Waugh v. Beck.]

A general verdict was given for the defendant, and on motion for a new trial and argument had, the court overruled the motion in an opinion filed, *inter alia*, as follows:

There were virtually two issues tried by the jury in this case. They had been framed by the court. The jury were not directed to pass upon these issues separately by their verdict, but they rendered a decision generally for the defendant. Of this we think the plaintiff has cause to complain. But the defendant consents that the record shall be made to show that the jury found the first clause of the issue in favor of the plaintiff, but found for the defendant upon the second. This will repair any injury the plaintiff might sustain because of the general verdict. It is urged further upon behalf of the plaintiff, that the second clause of the issue was not properly framed. We think, however, that it could not have been otherwise framed and have included all the elements necessary for defendant's defence. An order will be made correcting the verdict as indicated above and, as it is considered that the plaintiff has not been injured in any other particular, the rule is now dismissed.

Judgment was entered upon the verdict, whereupon the plaintiff took this writ and filed the above assignments of error.

*S. Griffith & Sons* (*E. P. Gillespie* with him), for plaintiff in error.—Stock jobbing is not contrary to any statute in Pennsylvania. Contracts in relation thereto have not been enforced by our courts not because they were contrary to statute but because the courts have held them *contra bonas mores*: Maxton *v.* Gheen, 75 P. S. R., 166; Farrira *v.* Gabell, 89 Id., 89; North *v.* Phillips, 89 Id., 250; Ruchizky *v.* De Haven, 97 Id., 202; Dickson's Exec. *v.* Thomas, Id., 278; Griffith's Appeal, 16 W. N. C., 249; Griffith *v.* Sears, 17 Id., 468; Scofield *v.* Blackmarr, 17 Id., 518. Each and every one of these cases has been decided by our court on the principle that such transactions are contrary to public policy, *contra bonas mores*.

One feature of all these cases to which we wish to call the special attention of the court is the important and vital fact that in every case the controversy arose between the actual parties to the transaction, the contracting parties themselves, who deal with or for each other and were the parties to gain or lose by the venture, and not an outsider who merely loaned money to another to engage in such transactions or ventures,—one who had nothing to gain by the result of the venture, and therefore should not be affected by that result, a mere stranger to the contracting parties and their dealings.

The court erred in submitting to the jury the second branch or clause of the issue and directing them to find whether or not the plaintiff furnished the money which formed the consideration of the said notes for the benefit of defendant, but knowingly and with the purpose of furthering a gambling transaction.

Judge Waugh was a mere lender of money; he was not a confederate, agent, broker or accessory of Beck. He was guilty of no violation of the law. He loaned Beck money. He had no interest or share in the gain that Beck might make. Simple knowledge of Beck's intention to purchase oil on margin is not sufficient to prevent his recovering an honest claim.

*Mason & Mason*, for defendant in error.—In all the states where the question has arisen it has been uniformly held, that there can be no recovery upon a contract where the intention of the parties was not to deliver the article, but to settle the difference in margins, and this whether the offence was in violation of a statute or the common law: Lyon v. Culbertson, 83 Ill., 33; Sampson v. Shaw, 101 Mass., 145; Gregory v. Wendell, 39 Mich., 337; Rumsey v. Berry, 65 Me., 570; Noys v. Spaulding, 27 Vt., 420; Williams v. Tiedemann, 6 Mo., 269; Bigelow v. Benedict, 70 N. Y., 202; Story v. Salomon, 71 Id., 420; Kingsbury v. Kirwan, 77 Id., 612; Harris v. Tumbridge, 83 Id., 95; Barnard v. Backhaus, 52 Wis., 593; Williams v. Carr, 80 N. C., 294.

Waugh not only knew that Beck intended to use this money for a gambling transaction, but he loaned it to him for the specific and express purpose of furthering it.

Mr. Justice TRUNKEY delivered the opinion of the court, November 1st, 1886.

In England wagers were not unlawful or unenforceable at common law, and therefore some of the decisions in that country upon wagering contracts, are inapplicable where such contracts are unlawful.

It has never been held in the highest tribunals of Pennsylvania that a wager is recoverable, and from 1803 the uniform current of authority is to the contrary. Every species of gaming contract, whether of insurance by a valued policy where the insured has no interest, or a bet on the existence of a letter, or the purchase of stocks or other commodities without the intention to deliver or receive them, is reprobated by our law: Pritchett v. Insurance Co., 3 Yates, 458; Edgdell v. McLaughlin, 6 Whar., 176; Brua's Appeal, 55 Pa. St., 294. In the latter case, THOMPSON, C. J., remarked: "Anything which induces men to risk their money or property without

[Waugh v. Beck.]

any other hope of return than to get for nothing any given amount from another, is gambling, and demoralizing to the community.    All gambling is immoral."

A transaction in stocks by way of margin, settlement of differences, and payment of gain or loss, without intending to deliver the stocks, is a mere wager: Maxton v. Gheen, 75 Pa. St., 166.    It is a gambling or wagering operation which the law does not sanction and will not carry into effect.    And a broker who advances money to pay losses incurred in such operations, cannot recover the amount advanced, nor even his commissions for his services: Farrira v. Gabell, 89 Id., 89; Dickson's Ex'rs v. Thomas, 97 Id., 278.    Where an infant dealt in stocks or margins, through brokers who did not know he was an infant, until the losses amounted to more than $5,000, which he had paid them, it was held that he dealt with the brokers as principals and could recover back the whole amount he had deposited with them as margins: Ruchizky v. De Haven, 97 Id., 202.    A bond given to cover margins in a gambling transaction will not be enforced in favor of an assignee, unless the obligor precluded defence by stating that he had none, to the assignee before his purchase from the obligee: Griffiths v. Sears, 112 Id., 523.

Although not prohibited by statute, a wagering or gambling transaction in stocks, grain, oil or other commodities, is unlawful in this state.    A gambling agreement, being in violation of the law and in the nature of a public wrong, has no legal effect.    The law forbids it on the ground that it is demoralizing to the community.    In an issue which involves inquiry whether such wrong was agreed to be committed, and was committed, it is as fitting to call it a gambling transaction as if it were so declared by statute.

The jury have found that the plaintiff furnished the money, that is, the consideration of the notes for the benefit of the defendant, but knowingly and with the purpose of furthering a gambling transaction.    No question has been made as to what commodity was the subject of the transaction, or whether the money was used for the purpose of gambling.    It would be well that the record show a finding of what the transaction was, not only that it appear whether it was violation of a statute, or of the common law, but also that it may appear whether the act was a public wrong.    If a statute prohibit an act, it is not necessary in order to invalidate a contract to do the act, that the statute should provide a penalty; nor does it follow because the statute imposes a penalty on a particular act, that such act is illegal: Whar. Cont., §§ 363, 364.    The issue should be so framed that the verdict will show the character of the transaction or agreement.

[Waugh *v.* Beck.]

As a general rule money loaned for the specific purpose that it shall be used by the borrower to do an act in violation of law, and has been so used, cannot be recovered back by the lender. It is not enough to defeat recovery by the lender that he knew of the borrower's intention to illegally appropriate the loan; he must know that the borrower is purposing the specific illegal use, and must be implicated as a confederate in the transaction: Wharton Cont., 341–2–3. "Where stock-jobbing is illegal, money lent for the purpose of carrying it on cannot be recovered, supposing it was lent knowingly and with the purpose of furthering the illegal act:" Id., 453.

Money lent and applied by the borrower for the express purpose of settling losses on illegal stock-jobbing transactions, to which the lender was no party, cannot be recovered back. It being unlawful for one man to pay, it cannot be lawful for another to furnish him the means of paying. This is said of a case where the means were furnished with a full knowledge of the object to which they were to be applied, and for the express purpose of accomplishing that object: Cannan *v.* Bryce, 3 B. & Ald., 254. That case arose out of the violation of a statute, founded on public policy to prevent stock-jobbing, and it prohibits payment or receipt of money for satisfying or making up any difference under penalty of £100.

When the plaintiff, whilst engaged with the defendant and others in gaming and playing at cards for money, lent the defendant a sum of money for the purpose of enabling the defendant to engage and continue in the gaming, it was held that the loan was an illegal contract, and that the money could not be recovered. The law which prohibits the end will not lend its aid in promoting the means designed to carry it into effect. That which the law prohibits, either in terms, or by affixing a penalty to it, is unlawful, and it will not promote in one form that which it declares wrong in another: White *v.* Buss, 3 Cush., 448.

The cases of Cannan *v.* Bryce and White *v.* Buss were where the acts were violative of statutes. But the principle is not limited in its application to such. It applies in many cases where the acts are illegal solely on the ground of public policy. A bond given in consideration of the loan of money with which to put a substitute in the Confederate army, cannot be enforced: Chritchlu *v.* Holloway, 64 N. C., 526. A note given for money knowingly lent to be applied to the purpose of suppressing a prosecution for a crime is illegal: Plumer *v.* Smith, 5 N. H., 553. Whether such offences are forbidden or punished by statute or not, money advanced for the purpose

[Waugh v. Beck.]

of furthering their commission, and so used, cannot be recovered.

At the argument, the case of Third Nat. Bank, 10 Fed. Rep., 243, was cited as favoring the position that the rule that money lent knowingly and for the purpose of furthering an illegal act cannot be recovered, applies to acts contrary to statute law, and not those contrary to the law founded on public policy. That case was upon promissory notes, the plaintiff claiming to be an innocent holder for value. The notes were given for balances on an illegal agreement, unenforceable between the original parties; but it was not within the gaming statute of Missouri which destroys the negotiable character of a note given for a gaming consideration, within the terms of that statute, for it pronounces a gaming contract absolutely void. And it was held that an innocent holder for value could recover. In the opinion it is said that the great weight of authority supports the rule that a broker or agent, employed to buy or sell commodities for the purpose of speculating on the rise and fall of prices merely, and the agent buys in his own name, but on his principal's account, and after losses have occurred in such transactions, he advances money at his principal's request to pay such losses, or if he pays such losses and afterwards his principal gives him a note therefor, may recover against his principal the advances so made, or the note so executed, notwithstanding the illegal character of the original venture. Whether such be the rule in this state need not be considered. But it is further remarked: "If a broker or factor supply his principal with funds for the express purpose of enabling him to engage in illegal transactions, and if he (the agent) conducts the illegal venture in his own name, it seems clear that he becomes a *particeps criminis*, and the law will not aid him to recover moneys advanced for such purposes, nor will it enforce securities taken therefor." And this makes near approach to the controlling principle and facts, as alleged in the case before us.

Where a man lends money to another for the express purpose of enabling him to commit a specific unlawful act, and such act be afterwards committed by means of the aid so received, the lender is a *particeps criminis*.

The instructions of the learned judge of the common pleas, were in the main correct, and in accord with the views hereinbefore stated. There was no dispute as to the use which was made of the money. The gist of the controversy was whether the plaintiff confederated with the defendant for its unlawful use. The court referred to the cases of felony and misdemeanor, stating what would make an accomplice in one, and a principal in the other, to enable the jury to understand that

[Waugh *v.* Beck.]

there must have been an agreement that the plaintiff would furnish for the defendant's benefit $500 for the defined purpose of buying oil for the defendant's benefit, and for the further defined purpose that that purchase should be upon margins, in order to defeat the plaintiff's recovery. There was no error in that. The third assignment is not sustained.

The plaintiff's second point was—"That if the jury believe, from the evidence, that the plaintiff loaned the money which formed the consideration of the notes for the benefit of the defendant, and, although he knows the money was to be used in buying oil on margins, still the plaintiff can recover." Answer: "Simple knowledge by the lender of money that the borrower was likely to, or was going to, use it in gambling might not be enough to prevent a recovery of the money loaned, but if the plaintiff paid this money to Mr. Lamberton, the oil broker, in accordance with an agreement made between himself and Mr. Cornwall, and if he knew this money was going to be used on margins, he could not recover. Therefore so far as this case is concerned, this request is refused."

The general charge concluded as follows: "The burden of proof in this issue is upon the defendant. It is for him to show by the weight of the evidence that Judge Waugh knew that this was being used for the purchase of oil upon margins. You will take all the evidence in the case and conclude whether he did know that fact."

The plaintiff's second point omitted reference to the allegation that he furnished money for the purpose of purchasing oil on margins, although there was evidence from which the jury could find that fact. If they believed all that was assumed in the point, it did not follow that the verdict should be for the plaintiff. It was rightly refused. The jury might find the facts assumed and also find that the plaintiff gave the money for the purpose of being used to speculate in the rise and fall in the price of oil, that is, to purchase oil upon margins. Then, the money having been so used, the verdict should be for the defendant. But the point simply referred to the plaintiff's knowledge of the borrower's purpose. The answer was explicit that if the plaintiff knew of the defendant's intention to purchase oil upon margins, he could not recover. And the same thought was expressed in the closing part of the charge. That, we think, was error. While proper instruction was embodied in the remarks respecting a felony or misdemeanor, it is by no means clear that the jury would not understand that they could infer the purpose from the mere fact of knowledge. The fourth and fifth assignments of error are sustained.

Judgment reversed, and *venire facias de novo* awarded.