## Charleston State Bank v. Charles Edman et al.

1. GAMBLING—*Recovery of Money Loaned to Pay Losses Incurred by.* —Where losses have been incurred in an illegal transaction, a person who lends money to the losing party with which to pay his losses can recover the same back, notwithstanding his knowledge of the fact that the money was to be used in paying such losses.

Assumpsit, for money loaned. Appeal from the Circuit Court of Coles County; the Hon. FRANK K. DUNN, Judge, presiding. Heard in this court at the November term, 1900. Reversed and remanded. Opinion filed June 10, 1901. Rehearing denied November 20, 1901.

J. H. MARSHALL, A. C. ANDERSON and J. W. & E. C. CRAIG, attorneys for appellant.

NEAL & WILEY, ANDREW L. CHEZEM and C. C. LEE, attorneys for appellees.

MR. JUSTICE BURROUGHS delivered the opinion of the court.

Appellant, having filed with the clerk of the Circuit Court of Coles County the necessary declaration, cognovit and proof that appellees had executed the promissory note and power of attorney thereto attached, obtained in vacation, on June 28, 1900, a judgment by confession against appellees for $4,205.44 upon the note, which is as follows:

"CHARLESTON, Ill., June 21, 1900.
$4,000.00.

On demand, after date, we promise to pay to the order of Charleston State Bank, of Charleston, Illinois, at said

bank, four thousand dollars, for value received, with interest at seven per cent per annum from date. (Here follows a power of attorney to confess judgment for the amount due on the note, and five per cent of the face of the same for attorneys' fees.

(Signed)    CHAS. EDMAN.<br>(Signed)    KENNY EDMAN."

At the next term of the Circuit Court of Coles County, after the judgment was rendered, appellees obtained an order staying further proceedings upon the same, and were given leave to plead to the declaration and defend the action; and by a number of pleas afterward filed, in substance, they charged, that the note sued upon was void, because the entire consideration therefor was $4,000, advanced by appellant to appellee Charles Edman, to enable him to pay "margins" upon a gambling contract which he made for an option to sell a large quantity of grain for future delivery and settlement at a specified price, with an agreement that the grain was not to be, in fact, delivered, but only the difference between the contract price and the market price thereof at the time specified for delivery, should be paid by the loser; and that the money so advanced was used by Charles Edman in payment of said "margins," with the full knowledge and express consent of appellant at the time it was advanced.

By appropriate replications, appellant denied the facts stated in appellees' pleas, the case was tried by jury and a verdict returned in favor of appellees. Appellant moved to set the verdict aside, and for a new trial, which being denied, an exception was taken and preserved. Thereupon the court vacated the confessed judgment and rendered judgment for appellees in bar of the action and for costs. Appellant brings the case to this court by appeal, and urges a reversal of the judgment upon the alleged grounds, among many others, that the court refused to direct a verdict for appellant at the close of the evidence.

The evidence shows that the consideration for which the note and power of attorney were given, was $4,000 loaned by appellant to appellees at its bank and through its cash-

ier. The cashier knew at the time the money was borrowed that it would be, and was in fact, used to pay "margins" which had then accrued and were owing to Odell Commission Company of Cincinnati, Ohio, by Charles Edman, under the terms of a wheat option contract which he had made before the money was borrowed; and that said contract was such as is prohibited by section 130 of our criminal code; but there was no evidence that appellant, its cashier, or any officer of its bank, had any interest in either said contract or said " margins," or that any of them had in any way aided, assisted or induced Charles Edman to enter into said contract.

At the close of all the evidence, counsel for appellant requested the court to give an instruction which they had prepared in writing, directing the jury to find a verdict for the defendant (appellant), which the court refused, and an exception was taken and preserved.

In Armstrong v. Toler, 11 Wheat. (U. S.) 258, Chief Justice Marshall said :

" Questions upon illegal contracts have arisen often both in England and this country, and no principle is better settled than that no action can be maintained on a contract, the consideration of which is either wicked in itself or prohibited by law. How far this principle is to affect subsequent or collateral contracts, the direct and immediate consideration of which is not immoral or illegal, is a question of considerable intricacy, on which many controversies have arisen, and many decisions have been made."

And in the same case, in referring to Faikney v. Reynous, 4 Burr. 2069, he also said :

" Lord Mansfield gave his opinion on the general ground that if one person apply to another to pay his debt (whether contracted on the score of usury or for any other purpose), he is entitled to recover it back again. This is a strong case to show that a subsequent contract, not stipulating a prohibited act, although for money advanced in satisfaction of an unlawful transaction, may be sustained in a court of justice."

And in speaking of the case of Steers v. Larseley, 6 Term Rep. 6, he also in the same case said Lord Kenion said

" ' that if the plaintiff had lent the money to the defendant
to pay the differences (in a stock jobbing transaction) and
had received the bill (of exchange) for the money so lent,
he might have recovered on it; *  *  * the money lent
would constitute a new consideration, and be the founda-
tion of a new contract, which could not be vitiated by the
knowledge of the purpose for which the money was lent,
and the bill drawn.' "

In Armstrong v. American Exchange National Bank of
Chicago, 133 U. S. 433, at page 470 of the opinion, Mr.
Justice Blatchford said, " Where losses have been made in
an illegal transaction, a person who lends money to the
loser with which to pay the debt can recover the loan, not-
withstanding his knowledge of the fact that the money
was so to be used," and cites Armstrong v. Tolar, *supra;*
Kimbro v. Bullitt, 22 How. 256; Planters Bank v. Union
Bank, 16 Wall. 500; Tyler v. Carlisle, 79 Me. 210; McGavock
v. Puryear, 6 Cold. (Tenn.) 34; and Waugh v. Beck, 114
Pa. 422.

In Tracy v. Talmage, 4 Kernan (14 N. Y.), 162, Mr. Jus-
tice Selden, speaking for the majority of the court, at page
176 of the opinion, said :

I consider it, therefore, as entirely settled by the author-
ities to which I have referred, that it is no defense to an
action brought to recover the price of goods sold, that the
vendor knew that they were bought for an illegal purpose,
provided that it is not made a part of the contract that they
shall be used for that purpose; and provided, also, that the
vendor has done nothing in aid or furtherance of the
unlawful design."

And at page 214 of the volume, where that case is reported
in a separate opinion, Mr. Justice Comstock said :

" Money may be lent in a gambling house, for the specific
purpose of staking it on the result of a game. The law
says it can not be recovered. But suppose a broker or a
banker lends money in his office in the regular course of
his business, knowing his customer to be a gambler by
habit, and believing that he wants the loan for gambling
purposes. If the illegal design does not enter into the
negotiations of the contract—if it forms no part of the

inducement to the transaction—will the knowledge or belief of the lender (and knowledge and belief for the purpose of this question are the same) prevent him from recovering the money when due? Such a doctrine, I apprehend, would be highly inconvenient in a community like this. It would exact a more frequent scrutiny on the part of dealers in the habits and designs of others, than the law requires of any man to make."

As the evidence in this record fails to show that the bank or any of its officers were in anywise connected with or aided in the unlawful contract which appellee had entered into with the Odell Commission Company, and it does show that the "margins" which appellees used the borrowed money in paying, had accrued before the same was loaned to them, as well as the illegal contract under which they accrued, we are satisfied that appellant was not *particeps criminis* with appellee Charles Edman or Odell Commission Company in relation to such contract. And since the note and power of attorney were given for money loaned to appellees, it rests, as against appellant, upon a valuable consideration, distinct from the use to which it applied.

Under the pleading, the burden was upon appellees to establish a good defense to the action, and failing to do so, the Circuit Court committed reversible error in not directing a verdict for appellant at the close of the evidence, for which error we reverse the order vacating the judgment confessed and the judgment in bar of the action, and will remand the case for such further proceedings as to law and justice appertain. Reversed and remanded.