MORITZ·*et al. v.* LUMBLEY.[*]

[106 So. 642.   No. 25355.]

(Division B.   Jan. 11, 1926.)

1. GAMING. *In view of specific statutes, general statutes inapplicable to dealing in future contracts.*

   Enforceability of contracts growing out of dealing in futures being dealt with specifically by Code 1906, section 2303, Hemingway's Code, section 1913; and Laws 1908, chapter 118, sections 2, 9, Hemingway's Code, sections 1915, 1922; Code 1906, sections 2300-2302, Hemingway's Code, sections 1910-1912-dealing with contracts growing out of gambling generally, have no application to the former.

2. GAMING. *Notes by loser on future contracts, to repay one who has paid losses at loser's request, valid.*

   Notes given with comaker, by loser on dealing in future contracts to repay one who at loser's request paid the winner, do not involve the illegal contracts; and so are enforceable.

---

[*]Corpus Juris-Cyc. References; Gaming, 27 C. J., pp. 1061, n. 65; 1075, n. 20;' 1076, n. 23, 24; 1079, n. 69; Validity of contracts providing for dealings in future, see 6 R. C. L., pp. 780-783; 2 R. C. L. Supp. 204, 205; 4 R. C. L. Supp. 441.

Appeal from chancery court of Lauderdale county.
Hon. G. C. Tann, Chancellor.

Suit by Miss Mollie Lumbley against C. E. Moritz and another. From an adverse decree, defendant Moritz appeals. Reversed and decree rendered.

*Truly & Truly,* for appellant.

We have here an employee who steals three thousand five hundred dollars from his employer. His wrongdoing is discovered and he is given an opportunity to make good his theft. He persuades his aunt to execute a deed in trust in order to satisfy the employer and in order to induce the employer to keep the wrongdoer in his employ and give him a chance to repay the money at the rate of one hundred dollars per month. This is a bold statement of the facts in this case. It transpires that this three thousand five hundred dollars which was stolen was used by the employee in gambling. This gambling was entirely unknown to the employer until the money had been lost. Does this constitute a gambling transaction within the meaning of our statute?

Chapter 30, Hemingway's Code, deals with gambling contracts and all our statute law on that subject is found therein. A careful reading of that chapter will show that everywhere the expression "knowingly received" or "knowingly loaned" is used. It cannot, and we are certain will not, be claimed that Moritz "knowingly" let Lumbley have money to gamble with.

Our court and our legislature is always jealous of a gambling contract; the statutes and decisions uniformly refuse relief to any person who undertakes to collect such an indebtedness. This is in line with the modern trend. With this condition we have no fault to find and we are not asking this court to deviate at all from this long-established rule. What we are now urging the court to do is to aid us to correct a greater evil. Hew to the line, but observe the well marked difference between this

case and a case for the collection of a gambling debt. Show the gambler that he cannot collect his debts in our courts, but also show the embezzler that he cannot steal from his employer and then raise a smoke screen by trying to bring the question of gambling into the case. We submit, that a distinction does exist between the case before the court and the case of an attempt to collect a gambling debt, and we beg the court to consider and give effect to this distinction.

*Amis & Dunn,* for appellees.

The single question involved in this case, as we see it, is whether or not the indebtedness of C. S. Lumbley to appellant grew out of gambling transactions. This is a question more largely of fact than of law, and it seems to us that when the facts and circumstances are considered in detail no other conclusion can be reached than that the transactions were gambling in their intent, nature and effect.

In their brief counsel for the appellant have ingeniously constructed a "man of straw" and then proceeded to demolish that gentleman quite effectually with perfectly sound reason and well established and universally accepted law. We have no quarrel to make with their argument except to say that it is based upon a premise that does not exist in their case and for that reason, although able, is without value to the poor cause of the appellant.

The appellant was engaged in a cotton and grain stock brokerage business in Vicksburg and Natchez. The place at Vicksburg was in charge of C. S. Lumbley. It is perfectly manifest from the testimony that the business generally was a cotton and grain future contract business—in other words, a gambling business. In the conduct of that kind of business for his principal, C. S. Lumbley claims that he, through misunderstanding, executed an order for a futures contract in the name of a sup-

posed *bona fide* customer.   He afterwards found he was
in error in executing this order and having discovered
that a loss had occurred he continued to manipulate the
account based on the original order in the hope that the
loss would be recovered, but instead of the fickle goddess
favoring his venture, matters grew worse until a loss
in margins had been sustained amounting to three thou-
sand four hundred dollars.   That this loss was the result
of gambling in connection with the business of the appel-
lant is too plain for argument.   C. S. Lumbley was called
on to make the loss good, and he did so by getting his
aunt, Miss Mollie Lumbley, to give her notes to appel-
lant for the amount, and to secure the payment of the
notes by a deed of trust on a small piece of property,
being all that she had, with the understanding that C.
S. Lumbley was to continue in the employment of ap-
pellant and pay the alleged indebtedness by deductions
from his salary from month to month.   Lumbley paid,
by deductions from his monthly salary thereafter, about
one thousand seven hundred dollars when he was let out
or discharged and his old aunt was then called on to pay
the balance.

Counsel for appellant contend with much earnestness
and apparent sincerity that this was not a gambling debt,
but represents money stolen by C. S. Lumbley from the
appellant.   The record furnishes no ground for such con-
tentions.   His indebtedness to his employer did not arise
from his taking money, which did not belong to him, or
to the taking of money or property at all.   It arose out
of his gambling transactions to which his employer was
a party, and if so, the employer cannot recover the loss.
If appellant was not a party to the transaction, he was
not bound thereby, and has not in legal contemplation lost
anything, and in either event, there is no legal considera-
tion for the notes and Miss Lumbley cannot be held
thereon.

ANDERSON, J., delivered the opinion of the court.

Appellee filed her bill in the chancery court of Lauderdale county against appellants to cancel and have set aside a mortgage on real estate owned by her and thirty-five notes, for one hundred dollars each, to secure which said mortgage was given. The indebtedness and mortgage were executed by appellee in favor of appellant, C. E. Moritz. The cause was tried on bill, answers, and proofs, and a final decree was rendered granting the relief prayed for, from which appellant, C. E. Moritz, prosecutes this appeal.

The ground relied on by appellee for the cancellation of the indebtedness and the mortgage securing the same was that the indebtedness grew out of a gambling transaction, namely, what is known as dealing in futures.

There is little, if any, conflict in the evidence. The case made is as follows:

Appellant was engaged in the cotton, grain, and stock brokerage business, with an office at Vicksburg; a large part of that business was what is known as dealing-in-future contracts on margin. It was the character of business covered by section 1202, Code of 1906, Hemingway's Code, section 932; section 2303, Code of 1906, Hemingway's Code, section 1913; and sections 1914 to 1926, inclusive, Hemingway's Code. Appellee's nephew, C. S. Lumbley, was in charge of and managed the Vicksburg office, and while so engaged, in violation of his agreement with appellant not to do so, and without the consent or knowledge of appellant, engaged in the name of another person, without the knowledge or consent of the latter, in various dealings in future contracts with the appellant's correspondents and upon appellant's credit. The result was a loss of three thousand five hundred dollars. After the loss had taken place, C. S. Lumbley notified appellant thereof. Appellant made the losses good with his correspondents, and to secure appellant for the

amount so paid, C. S. Lumbley induced appellee, his aunt, to execute the notes and mortgage involved in this case.

Appellee argues that the consideration for the notes grew out of gambling transactions, namely, future contracts, there being no agreement or intention between the parties thereto to deliver the actual commodities bought and sold. And that is true beyond question, and it is also true that the business in which appellant was engaged furnished C. S. Lumbley the opportunity to engage in the illegal business which resulted in the loss. But does it follow that the indebtedness thus incurred by C. S. Lumbley, and which was paid by appellant for him at his request, became so affected with the illegal business out of which it grew that the appellant will not be permitted to enforce payment of it? Putting the case as strongly as it can be put in favor of the appellee, it is this: Appellant was engaged in the unlawful business of dealing in future contracts. C. S. Lumbley, manager of his office, without the knowledge or consent of the appellant, and contrary to the agreement between them, in appellant's name and on his credit, engaged in such illegal business resulting in the loss. The loss was C. S. Lumbley's loss, not appellant's. Appellant paid the loss for Lumbley, and thereupon the later induced appellee, his aunt, to join him in executing their notes in appellant's favor for the amount so paid, and for the security of same to give a mortgage on her property. Is it a law that where a gambler has already lost his money in gambling and has induced another who had no part in the gambling nor knowledge of it to pay such loss, the gambler cannot legally obligate himself to repay the amount so paid for him? If he can make a binding obligation of that character, then clearly another person may become legally bound therefor as comaker of the obligation with the gambler.

Sections 2300 to 2302, inclusive, Code of 1906, Hemingway's Code, sections 1910 to 1912, inclusive declaring all contracts, judgments, securities, and conveyances

made, given, or executed, based in whole or in part upon money or other valuable thing "won, lost, or bet at any game or games, or on any horse race, cock fight, or at any other sport, amusement, or pastime, or on any wager whatever, or for the reimbursing or repaying any money knowingly lent or advanced for the purpose of such gaming or gambling, or to be wagered on any game," etc., shall be void, and providing that any transfer of property to secure the payment of such losses shall inure to the benefit of the wife and children of the loser, and that the loser may sue for and recover the money so lost, has no application to future dealings. That statute deals alone with the ordinary gambling games such as those therein enumerated and of like kind and character. The subject of the enforceability of contracts growing out of dealings in futures on margin is specifically dealt with by section 2303, Code of 1906, Hemingway's Code, section 1913, and sections 2 and 9, chapter 118 of the Laws of 1908, Hemingway's Code, sections 1915 and 1922, which follow:

"Sec. 1913 (2303). *Future Contracts Not Enforced.*— A contract for the purchase or sale of a commodity of any kind, to be delivered at a future date, the parties not intending that the commodity is to be actually delivered in kind and the price paid, shall not be enforced by any court; nor shall any contract of the kind commonly called 'futures' be enforced, nor shall a contract in this section mentioned be a valid consideration, in whole or in part, for any promise or undertaking, and any person who shall make any such contract and by reason thereof lose any money, property or other valuable thing, real or personal, and shall pay or deliver the same or any part thereof, may, or his wife or children may sue for and recover such money, property or other valuable thing so lost and paid or delivered, or any part thereof, from the person knowingly receiving the same, either for himself or as agent for another, together with all costs of suit."

"1915. *Contracts for Sales of Anything Where Actual Delivery of the Goods is Not Intended, Declared to be Void and Illegal.*—2. That every contract or agreement, whether in writing or not, whereby any person or corporation shall agree to buy or sell and deliver, or sell with an agreement to deliver, any wheat, cotton, corn or other commodity.; stock, bond or other security to any other person or corporation, when in fact it is not in good faith intended by the parties that an actual delivery of the article or .thing shall be made, is hereby declared to be unlawful, whether made or to be per-formed wholly, within this state, or partly within and partly without this state; it being the intent of this act to prohibit any and all contracts or agreements for the purchase or sale of any commodities or .thing of value or margin, commonly called 'dealing in futures,' when the intention or understanding of the parties is to receive or pay the difference between the agreed price and the market price at the time of settlement. Provided, that nothing herein contained shall be construed to apply to transaction by mail or wire, between persons in this state and persons outside of this state, when neither person is represented, directly or indirectly, in this state by any broker, agent,. attorney or intermediary in said transaction."

"1922. *Legal Representatives May Sue for and Recover Any Losses Because of 'Future' Dealings Within Five Years.*—9. That the parents or parent, wife, child or children, executor or administrator of the person sustaining a loss because of any such transaction made in this state as is prohibited by this act, or the assignee of any such person so sustaining a loss, may, within five year from the date such loss was sustained, recover by suit in the circuit or chancery court, the amount so lost, by the person making such contract, which sum shall be considered as liquidated damages to the person suing therefor, from the broker, agent or intermediary who negotiated such transaction."

Contracts growing out of future dealings having been dealt with specifically by the legislature, the statute dealing with contracts growing out of gambling generally has no application to the former. *Isaacs* v. *Silverberg,* 87 Miss. 185, 39 So. 420.

The enforcement of the notes and mortgage involved here does not involve the enforcement of any contract growing out of future dealings between appellant and C. S. Lumbley. They had no such dealings. The future contracts made by Lumbley are in no sense whatever sought to be enforced. These contracts were completed and the loss of Lumbley was paid by appellant for him. *Adler* v. *Searles,* 86 Miss. 406, 38 So. 209, is in point. The defendants in that case were a future brokerage concern in New Orleans. The plaintiff resided in Vicksburg. The latter, through the defendants, dealt in futures in New Orleans. The defendants charged the plaintiff a commission for their services. They were the ordinary future contracts, the actual delivery of the commodities dealt in not being contemplated by the parties. The contracts were therefore illegal under the laws of this state. In a settlement growing out of this business, the plaintiff paid the defendants, through error, one thousand dollars more than he owed them. Later discovering the error, the plaintiff sued the defendants for the one thousand dollars. The defense was that the one thousand dollars was part of the fruits of the illegal business carried on between plaintiff and the defendants. The court held that the one thousand dollars representing money paid by the plaintiff, through error, was recoverable, and that it was no defense to the action therefor that the contracts out of which the transaction took place were illegal where resort to such contracts was unnecessary to prove plaintiff's case.

The court said in discussing the question that the illegal business between the parties had been settled and a new and independent element had supervened, namely, the payment, through error, of one of the parties to the

other of one thousand dollars; that regardless of the fact that the one thousand dollars, paid by error, was part of the fruits of the illegal business, the plaintiff could recover it back. The illegal business had been put aside—it was a thing of the past and the recovery of the one thousand dollars did not involve the enforcement of any contract based on such business. That case is in line with the authorities generally. The statute dealing with the enforceability of contracts growing out of future dealings declares such contracts to be gambling contracts. It is stated in 27 C. J., pp. 1075, 1076, and 1079, sections 306, 307, and 314, and the text is supported by the cases in the notes, that money loaned by a third person to the loser in a gambling transaction to pay his losses may be recovered back although the lender knew for what purpose the money was to be used; and moneys paid at the request of the loser in discharge of a gambling debt may be recovered by the payer; and securities given by the loser to the payer are enforceable by the latter; and that money or property lost in gambling may be recovered if such recovery can be had without reference to the validity of the transaction and without causing the court to recognize or sanction the illegal transaction.

The illegal transactions out of which C. S. Lumbley suffered the losses had been completed. His losses had been suffered, and they had been discharged by appellant at his request, and afterwards to secure appellant for such payment, appellee, with her nephew, C. S. Lumbley, executed the notes involved and the mortgage to secure the same. We hold that the illegality of the transactions out of which the loss occurred was out of view, that the illegal contracts resulting in the losses are not here involved, and that there is no effort on the part of the appellant to enforce such contracts.

It follows from these views that the decree of the court below should be reversed, and judgment rendered here for appellant dismissing appellee's bill.

*Reversed, and judgment here.*