Parker *v.* Claypool.

No. 39489 February 21, 1955 78 So. 2d 124

April 4, 1955 78 So. 2d 884

*Gwinnup, Heidelberg & Fontaine,* Jackson, for appellant.

*Will S. Wells,* Jackson, for appellee.

McGEHEE, C. J.

This is an appeal from a judgment of the Circuit Court of Hinds County, Mississippi, wherein the trial judge peremptorily instructed the jury to eliminate from the promissory note sued on the sum of $6,000, together with interest and 10% attorney's fee thereon, on the ground that to this extent the note represented losses by the appellee in a gambling transaction under the circumstances hereinafter related.

At a date in 1946 not shown in the record before us in the above styled cause, the appellee J. B. Claypool was in Shreveport, Louisiana, one evening and desired to play the game of poker with persons other than the appellant, L. E. Parker, at the Crystal Bar, which appears to have been under the management or control of a "fellow named Boozallus." The appellee wanted the appellant to stand good for any losses to the extent of $3,500 that might be sustained by the former to any or all of the others who were to engage in the game of poker that evening. The appellant agreed to do this, and he testified on cross-examination in this case that "Boots (evidently meaning Boozallus) came to the phone and I o.ked it; and about 1:30 he (evidently meaning the appellee Claypool) wanted more and I told them 'no'; he

wanted to know if I'd stand for $2,500.00 more, he might get even. * * *,'' making a total of $6,000.00.

The appellee lost both the $3,500 and the $2,500 in the game to the other participants therein, which was paid by the appellant to the winners on the next day.

Thereafter, on January 25, 1951, the appellee Claypool executed and delivered to the appellant Parker his promissory note, dated and payable at Shreveport, Louisiana, for the sum of $10,473.14, and admittedly the $6,000 lost by the appellee in the poker game, together with interest thereon at 4% per annum up to January 25, 1951, was included in this $10,473.14 note.

It is conceded by counsel for each of the parties on this appeal that although the promissory note of January 21, 1951, due two years after date and bearing interest at the rate of 2% per annum thereafter is governed by the statutes of Louisiana and the decisions of the courts of that state, although the note was actually signed at Jackson, Mississippi, where the appellee now resides and where this suit was brought.

■■ ■ It seems to be well settled by the decisions of the Courts of Louisiana, as well as of this Court and others, that one advancing money to another with which to pay gambling losses *already incurred* is entitled to recover of the borrower any sum or sums so advanced, even though the lender knows for what purpose the money is being borrowed from him, provided he did not aid or abet the borrower in engaging in the gambling operation. Clemons v. Succession of Johnson, 10 La. App. 230, 120 So. 664; Brand v. Evans, 7 La. App. 205; Russo v. Mula, 49 So. 2d 622 (La.); Moritz, et al. v. Lumbley, 141 Miss. 453, 106 So. 642; Couret v. Conner, 118 Miss. 374, 79 So. 230; Armstrong v. American Exchange Bank, 33 L. Ed. 747, 133 U. S. 433, 10 S. C. R. 450; Charleston State Bank v. Edman, 99 Ill. App. 235.

■■ ■ However, in the instant case it is readily seen from the foregoing recital of facts that the appellant did

not lend the $6,000 to the appellee for the purpose of paying gambling losses which he had already sustained, but on the contrary he aided and abetted the appellee in engaging in the poker game at Shreveport by furnishing him the means with which to become a participant in the game. Moreover, the appellant was interested in the successful outcome of the game on behalf of the appellee in order that he might not have to make good any losses. Then, too, he stood good for the additional $2,500 in the hope that the appellee would thereby be enabled to ''get even'' and relieve the appellant from having to pay any losses for him.

In support of the correctness of the judgment appealed from, we deem it sufficient to cite the case of Russo v. Mula, supra, and the Louisiana decisions therein cited, which sets forth in full Section 2983 of the Civil Code of Louisiana on the question of nonliability in such a case, and wherein the court said: ''The court denied plaintiffs claim because plaintiff had indirectly contributed to the losses by providing the means with which the game was conducted and the building in which it was held. The court stated that under these facts the defendant was not more bound legally or morally to pay the plaintiff than he was to pay the parties who won from him in the prohibited game.'' The decision of the trial court was therein affirmed.

In the instant case it was not shown that the plaintiff owned or operated the gambling place, although he had operated such a place in former years at El Dorado, Arkansas, but he did stand good for the money that the defendant might lose in this poker game, and he did so in advance of the sustaining of such losses by the defendant. He enabled the defendant to engage in the game since the record discloses that the other gamblers would not have played with him without their winnings from the defendant being guaranteed in advance by the plaintiff. The plaintiff paid the defendant's losses to

those who had won from him, and he did so on the following day, as aforesaid. The defendant was under no legal obligation to pay these losses, but the plaintiff felt morally bound to make good his promise to take care of them.

The writer of this opinion, expressing his own individual views, (which are doubtless the views of the other Judges participating in this decision), believes that when a person borrows money from another he should pay it back without regard to the purpose for which it is to be used by the borrower, but we are all in accord that the plaintiff could not legally enforce the promise of the defendant to reimburse him under the circumstances disclosed by this record.

██ Under the decisions of the Courts of Louisiana if the illegal portion of a promissory note sued on is separable from the remainder of the consideration of the note, the plaintiff may recover the legal portion of the obligation. ██ He recovered a judgment for only $4,255.93, which represented principal, interest and attorney's fee on such amount of the money as had been advanced to the defendant with which to buy oil and gas leases and royalties, and the judgment for that amount is affirmed, which means that the action of the trial court in eliminating the $6,000, together with interest and attorney's fee thereon by an instruction to the jury was correct, and such ruling of the court is also affirmed.

Affirmed.

*Hall, Kyle, Holmes* and *Gillespie, JJ.,* concur.

---

ON MOTION TO CORRECT JUDGMENT

McGehee, C. J.

On January 25, 1951, the appellee, J. B. Claypool, executed and delivered to the appellant, L. E. Parker,

his promissory note for the sum of $10,473.14. In a suit on this note in the Circuit Court of Hinds County, the trial judge, by peremptory instruction to the jury, eliminated $6,000 of the principal of said note, together with any accrued interest and attorney's fee on such $6,000, because of the fact that the proof showed that $6,000 of the note was for a gambling debt paid by the appellant, Parker, to other persons in compliance with an agreement on his part that he would stand good for Claypool's gambling losses to that extent and which the appellant agreed to do before the losses were incurred.

On appeal here the appellee neither filed a cross-assignment of error nor made any contention in his brief that the judgment based on the verdict of the jury for the sum of $4,255.93, representing the excess of the principal, interest, and attorney's fee on the $10,473.14 note over and above the $6,000 gambling debt, was erroneous.

The only amount in controversy on the appeal as disclosed by the appellant's assignment of error and the briefs of counsel for the respective parties, was the $6,000 gambling debt eliminated from the consideration of the jury by the peremptory instruction granted in that behalf by the trial court.

The judgment entered on the minutes of this Court following the rendition of our opinion in this cause, reported in 78 So. 2d 124, orders and adjudges that the appellee " do have and recover of and from the appellant, L. E. Parker, the sum of $212.79, being damages at the rate of five per centum as allowed by statute and all costs of this appeal to be taxed, etc."

We are of the opinion that the judgment entered is erroneous in allowing the appellee, J. B. Claypool, the sum of $212.79 as statutory damages on the amount of $4,255.93 that he owes to the appellant, L. E. Parker. The action of the trial court in eliminating the $6,000 of

the principal of the note sued on, together with the interest and attorney's fee thereon was affirmed on appeal, and therefore there is no question but what the appellant is liable for the cost on this appeal; █ but we do not think that it was contemplated by Section 1971, Code of 1942, that an appellee is entitled to collect damages on what he owes to an appellant, and especially where the amount on which the five percent damages is claimed was not in controversy on the appeal to this Court. The appellant merely sought on his appeal to be adjudged entitled to the additional sum of $6,000, with interest and an attorney's fee thereon, and when he lost on appeal in his effort to get this amount added to the judgment rendered by the trial court, he became liable for the cost on the appeal, but for nothing more.

We are not unmindful of the decision of this Court in the case of Eagle Lumber & Supply Co. et al. v. Robertson, 161 Miss. 17, 135 So. 499; but we do not think that that decision is controlling under the facts hereinbefore stated. It just would not make sense to apply that case to the situation here involved. The appellee has already defeated the attempt on the part of the appellant to collect $6,000, with interest and attorney's fee, of the sum of money that he borrowed from the appellant, and he should not now be permitted to require the appellant to pay unto him $212.79 as damages on what he has been adjudged to legally owe the appellant.

The judgment will be corrected so as to eliminate the allowance to the appellee of the said sum of $212.79, representing the 5% damages on $4,255.93 that he owes to the appellant.

Motion to correct judgment sustained.