JOSEPH ISAACS *v.* HENRY SILVERBERG ET AL.

[39 South. Rep., 420.]

GAMBLING. · *Futures.   Recovery of margins.   Code* 1892, §§ 1120, 1121,
2114, 2116, 2117.

Code 1892, § 2116, providing that money lost at gambling may be
sued for and recovered by the loser has no relation to contracts
for the buying of futures, which are made invalid by sec. 2117,
but includes only money lost by betting on games of chance, horse
races, etc., as referred to in sections preceding sec. 2117.

FROM the circuit court of Warren county.

HON. GEORGE ANDERSON, Judge.

Isaacs, the appellant, was plaintiff in the court below; Silver-
berg and others, appellees, were defendants there.   From a judg-
ment sustaining defendants' demurrer to plaintiff's declaration
and (the plaintiff not seeking to amend) dismissing the suit, the
plaintiff appealed to the supreme court.   The facts as charged
in the declaration appear from the opinion of the court.

*Brunini & Hirsch,* for appellant.

The declaration is based upon Code 1892, § 2116, and the
contract, commonly called "futures," set out in the declara-
tion, is a "wager."   *Clay* v. *Allen,* 63 Miss., 426; *Campbell* v.
*National Bank,* 74 Miss., 526 (s.c., 21 South. Rep., 400; 23
South. Rep., 25); Tiedeman's Commercial Paper, sec. 189.
Section 2116 is not to be strictly construed.   "In general where
a right of action for his own benefit is given to a loser, or
where a right accrues to the wife or children of the loser, these
statutes are treated as remedial, not penal, in their nature, and
are liberally construed."   14 Am. & Eng. Ency. Law (2d ed.),
625, and cases cited in support of text.

A mere reading of this section shows clearly that the verbal
confirmation thereof leaves no foundation for the application of

the doctrine of *ejusdem generis.*· The clause "or by any wager whatever" stands out distinct, and wholly independent of the preceding clauses. It is to be read as if all that part of the section between it and the first words of the section, "if any person," were omitted entirely. It would, therefore, read, "if any person, by any wager whatever, shall lose any money," etc. It is true that the clause "or by any wager whatever" is disjunctively connected with the clauses preceding it, but it has no direct reference or connection with them. It is separate and distinct, standing upon its own meaning. It does not rest or depend for its foundation upon the immediately preceding clauses; it would not fail of meaning if the clauses between "if any person" and "or by any wager whatever" were entirely omitted.

If the clause "or by any wager whatever" were not independent, separate and distinct, it would read, "or by playing or betting at any wager whatever;" or the word "by" would be omitted and the clause would read, "or any wager whatever;" or the word "other" would be inserted after "any." In these constructions of the clause, its independence and connection with the preceding clauses would be evident.

In the first and third instances the connection, reference, and independence are shown by the words employed, and in the second by the omission of a word.

The clause in the section reading "or by betting on any horse race or cockfight or at any other sport or pastime" shows by its conformation a proper basis for the application of the doctrine of *ejusdem generis.* The latter part of the clause "or at any other sport or pastime" is independent, has reference to and is connected with the preceding part of the clause last quoted.

Aside from the above contention, the doctrine of *ejusdem generis* does not always apply, even though the foundation for the same exists in the composition of the enactment. At most this rule of interpretation is merely an aid in determining the legislative intention.

"This rule can be used only as an aid in determining the legislative intent, and not for the purpose of controlling the intention or of confining the operation of a statute within narrower limits than were intended by the lawmaker. It affords a mere suggestion to the judicial mind that where it clearly appears that the lawmaker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace any other than those within the class. The suggestion is one of common sense. Other rules of construction are equally potent, especially the primary rule, which suggests that the intent of the legislature is to be found in the ordinary meaning of the words of the statute." Sutherland, Stat. Const., sec. 279; Black on Interpretation of Laws, sec. 63, p. 143.

"But in the absence of some clear indication that the language is to receive a limited signification, general words will receive their general and natural meaning, and the courts should put no greater restriction on the language used than the nature of the provision and the subject-matter to which it relates necessarily impose." 26 Am. & Eng. Ency. Law (2d ed.), 608.

The evil of gambling in "futures" was not abating when the legislature enacted the code of 1892; it was on the increase. Where is the "clear indication" that the language of sec. 2116 is to receive a "limited signification?"

This court in *Clay* v. *Allen, supra,* and *Campbell* v. *National Bank, supra,* in construing sec. 2114, whose language is almost identical with sec. 2116, failed to supply the doctrine of *ejusdem generis* and thereby exclude "futures" from those "wagers" legislated against. What reason can be advanced for its application to sec. 2116 which will not be a reason for its application to sec. 2114?

Was sec. 2116, so far as futures are concerned, repealed by implication by the enactment of sec. 2117?

In the case of *Campbell* v. *National Bank, supra,* on sugges-

tion of error, it was contended that the act of 1882—which is Code 1892, § 2117—repealed, by implication, Code 1880, § 990; Code 1892, § 2114, in so far as "futures" were concerned.

In answer to this contention, this court says: "But there is not the slightest reference in the act of 1882 to sec. 990 of the code (1880), and repeals by implication are not favored."

*Smith, Hirsh & Landau,* for appellees.

*Adler* v. *Searles,* 86 Miss., 406 (s.c., 38 South. Rep., 209), is decisive of this case, and under the principles there announced the judgment below should be affirmed. In the Adler case a peremptory instruction was sustained for the plaintiff, although it appears, as stated by this court:

"The contention of appellant is that the dealings in question were based upon gambling contracts, and that his accounts had been charged with commissions claimed by appellee for negotiating his gambling contracts, which amounted in the aggregate to more than the amount sued for, and that (quoting from brief of counsel for appellant) 'by reason of the illegality of the contracts in question, Searles was not entitled to retain these commissions, and that they should be set off against the sum sued for.'"

If a broker "is privy to the lawful design of two parties and brings them together for the purpose of entering into an illegal agreement, he is *particeps criminis,* and cannot recover for services rendered or losses incurred by himself on behalf of either in forwarding the transaction," as declared by the supreme court of the United States in *Embry* v. *Jemison,* 131 U. S., 336-345, and which is the general doctrine in the United States.

The appellant concedes that his declaration is based on Code 1892, § 2116, and insists that the contract set forth in the declaration is "none other than a gambling one in cotton futures,"

and is embraced by sec. 2116. But, in order to maintain this proposition, he has to ignore sec. 2117.

In construing Code 1892, §§ 2114, 2116, the doctrine of *ejusdem generis* must be applied. This court is committed to that doctrine. "When special words are used in a statute, followed by terms of more general import, the general words are to be limited to matters *ejusdem generis* with the special words, unless a contrary intention appears." *Leinkauf* v. *Barnes,* 66 Miss., 207; *Ice Company* v. *Greenville,* 69 Miss., 86 (10 South. Rep., 574).

Therefore, as secs. 2114 and 2116 refer to such gambling contracts as games of cards, cockfights, etc., the term "wager" therein used must apply to the same kind of wager, or at least cannot be applied to things that were not before regarded wagers.

CALHOON, J., delivered the opinion of the court.

Mr. Isaacs, in his declaration against appellees, avers that he is a citizen of the state of Louisiana and that they are citizens of the state of Mississippi, and that he contracted with them to buy "for him cotton for future delivery," and that he gave them $400 "as a margin;" that the contract was not with the intention of either party of any actual delivery of the cotton to either of the parties, but "was in fact none other than a gambling one in cotton futures, and so known to both plaintiff and defendants; and that the money so paid over has been lost under said gambling contract." Appellees demurred; the demurrer was sustained, and the appellant declined to amend or plead further, and appeals.

Such speculative contracts with brokers were valid at common law, are valid now in some states, would be valid in Mississippi but for statutes, and are, perhaps, valid if made in Louisiana, where Mr. Isaacs resides. It may be said in passing that the declaration does not aver where the contract was made, and

that, if it was made in Louisiana by correspondence, Mr. Isaacs, from his view of the law, may be in a very comfortable position indeed. All he would have to do would be to select a solvent broker in Mississippi, and he could indulge in dealings in futures to his heart's content, safe from suit, with the certainty of never remaining loser. He could always recover from his broker the margins he turned over to him for investment. This is an argument quite persuasive that there was no legislative intent to encourage such a state of affairs. If it did intend such results, the statute making them possible should be plain. Certain it is that Mr. Isaacs was in full complicity with appellees, and the court below would not entertain his case, any more than it would have entertained the case of appellees if they had sued him for unpaid margins. *Adler* v. *Searles,* 86 Miss., 406 (s.c., 38 South. Rep., 209).

His learned counsel, however, knowing the necessity of producing some enactment to give him a standing in the courts, rely on Code 1892, § 2116, and especially on the words in that section, "or by any wager whatever." The same words, "or on any wager whatever," are also used in sec. 2114, which declares that all "contracts," etc., based on the foundation of "money or any valuable thing won, lost, or bet at any game or games, or on any horse race, cockfight, or at any other sport, amusement, or pastime, or on any wager whatever, or for the reimbursing or repaying of any money lent or advanced for the purpose of such gaming or gambling, or to be wagered on any game, play, horse race, cockfight, or on any sport, amusement, pastime, or wager, shall be utterly void." Section 2116 is this: "If any person, by playing at any game whatever, or by betting on the sides or hands of such as do play at any game, or by betting on any horse race, or cockfight, or at any other sport or pastime, or by any wager whatever, shall lose any money," etc., "and shall pay or deliver the same, the person so losing," etc., "may sue for and recover such money," etc., "from the person

knowingly receiving the same, with costs." Whether these sections, without more, would cover the present case, we need not decide. But the very next section (2117) is as follows: "A contract for the purchase or sale of a commodity of any kind, to be delivered at a future day, the parties not intending that the commodity is to be actually delivered in kind and the price paid, shall not be enforced by any court; nor shall any contract of the kind commonly called 'futures' be enforced; nor shall a contract in this section mentioned be a valid consideration, in whole or in part, for any promise or undertaking."

On the doctrine *"noscitur a sociis,"* applied to construction, we are of opinion that operations in "futures" were not designed to be included among the sorts of wagering referred to in the first two sections, so as to authorize recovery of money paid the broker. If the reverse was the purpose, and if such transactions were designed to be in the category of wagers, as mentioned in the preceding sections, then the provisions of sec. 2117 are useless verbiage, since there would be precisely the same lack of power to recover under the preceding section (2116). The legislature was content with specifically refusing the enforcement of "futures" contracts in sec. 2117 and in fixing penalties in secs. 1120, 1121. 14 Am. & Eng. Ency. Law, 640.

*Affirmed.*