# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MISSISSIPPI,

AT THE

## MARCH TERM, 1909.

WILLIAM C. GRAY v. SAMUEL H. ROBINSON.

[48 South. 226.]

1. GAMBLING. *Futures.* *Wagering Contract.* *Code* 1892, § 2117. *Promissory note.* *Consideration.* *Innocent holder.*

Under Code 1892, § 2117, providing that contracts for the purchase of "futures," wagering contracts, shall be unenforceable and shall not be a valid consideration for any promise, a note payable to bearer given for such purchases cannot be enforced against the maker, even by an innocent transferee for value.

2. SAME. *Peremptory instruction.*

Where from the whole testimony reasonable minds could not differ about the fact that the note sued upon was given for a balance arising from a dealing in cotton "futures," and neither party contemplated an actual delivery, a peremptory instruction forbidding a recovery on the note is justified, although one of the parties affirmed that the other could have demanded and would have received the cotton had he required it, and there was printed on the written confirmation of the contract a false statement to the effect that the parties contemplated an actual delivery.

FROM the circuit court of Alcorn county.

HON. EUGENE O. SYKES, Judge.

Gray, appellant, was plaintiff in the court below; Robinson,

95 Miss.—1

appellee, was defendant there. From a judgement in defendant's favor, the plaintiff appealed to the supreme court.

One George Hazard, doing business as the Corinth Brokerage Company, was engaged in buying and selling cotton for future delivery. Among his customers was Robinson, appellee, who had numerous dealings, extending over four years, with the company. In all the dealings between these parties no actual cotton was ever received or delivered by either of them, but all settlements were made on the difference between the contract price and the market price at the time of settlement. On June 26, 1906, Robinson's losses amounted to $2,600, for which he gave Hazard his notes, payable to bearer, one of which, for $1,000, Hazard assigned for value received to Gray, the appellant, who, after Robinson's refusal to pay the same, instituted this suit thereon. Defendant pleaded the general issue, and a special plea setting forth the fact that the transactions in the settlement of which said notes were given were gambling transactions, condemned by Code 1892, § 2117, in force at the time said transactions were had. Plaintiff demurred to the special plea; his demurrer was overruled, and issue was then joined thereon. After hearing all the testimony for both plaintiff and defendant, the court below granted a peremptory instruction for defendant.

The first assignment of error was predicated of the action of the court below in overruling appellant's demurrer to the special plea, because Gray was an innocent purchaser for value of the note sued on, a fact not denied by the plea. The second assignment of error was predicated of the granting of the peremptory instruction. In support of the second assignment of error, appellant relied upon the testimony of Hazard that either of the parties had the right to demand the actual cotton bought and sold, and the fact that on the confirmation of the transactions there was a printed stipulation as follows: "We receive no orders except with the understanding that the actual delivery of the property bought or sold is in all cases contemplated and

understood," but the witness did not claim that either party contemplated an actual delivery or expected it to be demanded or made. Robinson denied that there was any intention to deal with the actual commodity.

In all his dealings, Hazard, the Corinth Brokerage Company, extending over more than four years, had never delivered or received a bale of cotton to or from any customer.

*Lamb & Johnson,* for appellant.

It is the province of the jury to "determine from the testimony what the intent of the parties was in reference to the delivery of the cotton bought and sold." *Clay v. Allen,* 63 Miss. 426.

No matter how thoroughly convinced the court was of what was intended between the parties, still the court cannot substitute its opinion for that of the jury. This doctrine is too well established to need any citations to sustain it. What the jury would have decided after having heard all of the facts is the question, and it was for them, and them alone, to determine. The court can no more invade the province of a jury than a jury can invade the province of a court. Each bears its particular and special relation to the other. The main province of the jury is to determine just such questions as were presented in this case, and which the court in this case refused to allow them to do. Counsel for appellee say that the case of *Western Union Telegraph Company v. Littlejohn,* 72 Miss. 1025, 18 South. 418, is easily distinguishable from the case at bar, for the reason, as they say, the dealings were for the present and not for the future delivery. Counsel for appellee, in their zeal to present as strong a case as possible for their client, lose sight of the fact that a sale for future delivery of any commodity is as binding and as valid as any contract can be made unless the contract is tainted with the word "future" in its technical sense, which means gambling, as is clearly shown in the case above cited.

*Mitchell & Clayton,* for appellee.

"A contract violative of public policy, or of a positive rule of law, or against good morals, will not be enforced, even at the suit of an innocent transferee, although it be evidenced by a promissory note payable to bearer." *Montjoy v. Delta Bank,* 76 Miss. 402, 24 South. 870.

It is the contention of counsel for appellant that from the mere fact that Hazard testified that he intended to receive and deliver the actual commodity bought and sold, and the fact that Hazard issued his confirmations of the transactions in question, containing the following, in small print "We receive no order except with the understanding that the actual delivery of the property bought or sold is in all cases contemplated and understood," the court should have permitted the case to go to the jury.

The only question before the court is this: Did the parties at the time of the making of the contracts intend that the actual cotton should be delivered in kind and the price paid therefor? If they did, it was a valid contract. If they did not, it was a void contract, and cannot now be enforced even at the instance of an innocent purchaser for value of the notes. Appellee says that it was not the intention of the parties that the actual cotton should be delivered and the price paid, but that it was all a "future" deal. So the question resolves itself into this: Did Hazard intend at the time of making the contracts to receive and deliver the actual commodity in kind?

"A contract for the payment of differences in prices, arising out of the rise and fall in the market price above or below the contract price, is a wager on the future price of the commodity, and is therefore invalid." *Campbell v. National Bank,* 74 Miss. 526, 21 South. 400; 23 South. 25.

It is really amusing to note the answers of Hazard on cross-examination, when he was being asked as to the number of bales of actual cotton received and delivered by him during his four years business in Corinth. Instead of answering the questions,

he persists in stating that each transaction was a "valid and legal transaction." It seems that he doth protest too much. And he admits that in a course of dealing between Robinson and himself, involving the purchase and sale of four thousand five hundred bales of cotton, not one bale was actually received or delivered by him, and he states positively that the settlements in regard to these four thousand five hundred bales of cotton were made on the difference between the contract price and the price at the time of settlement. The "gossamer disguise" is thrown aside, and the true intentions of the parties is "glaringly apparent."

This case appears to me to be on all fours with the case of *Violett v. Mangold,* 27 South. 875, where the court say: "Looking through the gossamer disguise here, it is glaringly apparent that the promissory note sued on is based on an account for losses in dealing in futures. We uphold the public policy of the state."

This court will not permit the public policy of our state to be abused by allowing the enforcement of a contract vicious upon its very face, simply because one of the parties thereto stated that he acted in good faith and mailed the other a statement containing the words printed in small type on the confirmation above quoted. It is simply a make-shift, a subterfuge, a "gossamer disguise" to hide behind and use in the courts.

I feel that I can safely rest this case upon the authority of *Lemmonius v. Mayer,* 71 Miss. 814, 14 South. 33; *Virden v. Murphy,* 78 Miss. 515, 28 South. 851; *Lum v. Fauntleroy,* 80 Miss. 757, 32 South. 290.

WHITFIELD, C. J., delivered the opinion of the court.

It is held in *Montjoy v. Delta Bank,* 76 Miss. 402, 24 South. 870, that "a contract violative of public policy, or of a positive rule of law, or against good morals, will not be enforced, even at the suit of an innocent transferee, although it be evidenced

by a promissory note payable to bearer." It was held in *Campbell v. National Bank,* 74 Miss. 526, 21 South. 400, 23 South. 25, that "a contract for the payment of differences in prices, arising out of the rise and fall in the market price above or below the contract price, is a wager on the future price of the commodity, and is therefore invalid." It is perfectly plain, from the testimony in this case, that the contracts here were exactly of this latter kind. Not a bale of actual cotton is shown to have been delivered in the four years of dealing.

The judgment is *affirmed.*

FLETCHER, J., took no part in the decision of this cause.