## Ascher & Baxter *v.* Edward Moyse & Co.

[57 South. 299.]

1. STATUTES. *Repeal by implication. Bucket shops. Gaming. Contracts. Public policy. Construction. Appeal and error.*

> The repeal of a statute by implication is not favored in the law and where two statutes are seemingly repugnant they must be so construed, if possible, that the latter shall not be a repeal of the former by implication.

2. SAME.

> Where there is a positive repugnancy between the provisions of the new law and those of the old, then the old law is repealed by implication only, to the extent of the repugnancy.

3. SAME.

> Where a later act covers the whole subject of earlier acts, and embraces new provisions, and plainly shows that it was intended, not only as a substitute for the earlier acts, but to cover the whole subject then considered by the legislature, and to prescribe the only rules in respect thereto, it operates as a repeal of all former statutes relating to such subject-matter, even if the former acts are not in all respects repugnant to the new act.

4. SAME.

> The rule that a later act covering the whole subject of a former act and embracing new provisions operates by implication to repeal the prior act is subject to the qualification that where the later act expresses the extent to which it is intended to repeal prior laws, as by a clause repealing all laws in conflict therewith, it excludes any implication of a more extended repeal.

5. LAWS OF 1908, CHAPTER 118, SECTION 1. *Bucket shops.*

> Section 1 of the Laws of 1908 deals alone with what are known as "bucket shops," and places maintained to receive orders for this class of business, and those persons who are engaged in the management or conducting of this kind of business either as principal or agent.

6. SAME.

Laws of 1908, chapter 118, does not impliedly repeal Code of 1906, sections 1201, 1202, 1203, because the act of 1908 does not deal with the whole subject relating to futures, but prohibits the establishment of "bucket shops" in the state. An action may still be maintained under section 2303 for money lost in future transactions.

7. GAMING CONTRACTS. *Public policy.*

It is the public policy of the state to condemn contracts commonly known as "futures" and a contract for the payment of differences in price arising out of the rise and fall of the market price above or below the contract price is a wager on the future price of a commodity and is invalid.

8. STATUTES. *Construction. Previous acts.*

Courts in construing a statute will presume that the legislature in enacting the statute was familiar with its own enactments and with the construction which the courts had placed on those enactments.

9. CONTRACTS. *Construction. Extra-territorial force. Public policy.*

An act of the legislature has no extra-territorial force, and neither makes unlawful a contract made in another state nor subjects a party thereto to punishment; yet the courts of the state will not enforce contracts made out of this state which are contrary to its public policy.

10. STATUTES. *Construction. Acts 1908, chapter 118, section 2.*

The proviso of section 2 of the acts of 1908, exempting from the condemnation of this act those transactions conducted and carried on through the medium of the mail or telegraph between persons in the state and persons outside of the state, was inserted by the legislature upon the erroneous idea that this provision was necessary to preserve the constitutionality of the act, and it does not render dealings in futures valid when conducted by such persons.

11. SUPREME COURT. *Questions reviewable.*

The supreme court is strictly a court of review and only in rare instances will the court consider, the merits of a controversy, unless passed upon in the lower court.

12. SAME.

Where the lower court erroneously dismissed a bill on the ground that the plaintiff could not sue, the supreme court will not pass upon the merits but remand the cause to the lower court.

APPEAL from the chancery court of Hinds county.
HON. G. G. LYELL, Chancellor.

Suit by Ascher & Baxter against Edward Moyse &
Co. et al. From a decree dismissing the bill complainants appeal.

The appellants filed a bill in chancery on January
15, 1910, against the appellees Edward Moyse & Co.,
cotton brokers in New York City, the State Bank &
Trust Company, a banking institution domiciled at Jackson, Miss., and M. A. Lewis, an alleged debtor of said
Moyse. The gravamen of the bill is that, beginning on
December 31, 1909, the appellants entered into various
contracts for the purchase of future cotton from said
Moyse; that it was never the intention of either party
that actual cotton should be bought, sold, or delivered,
but that it was a gambling contract, and was carried
on by depositing margins against a decline in the market; that such margins were deposited with the State
Bank & Trust Company of Jackson, Miss.; that the
money so deposited was kept to the account of Moyse
with the said State Bank & Trust Company, to be drawn
against by Moyse, who carried out appellants' contracts
on the New York Cotton Exchange. The bill further alleges that the appellants had deposited eight thousand
dollars with said bank, and had remitted direct six hundred dollars from the time the dealings first began, and
suit was brought for these amounts, which, it is claimed,
they lost by said speculative future transaction. It is
further alleged that six thousand, five hundred dollars
of this amount is still in the hands of said bank, which
amount the bill seeks to subject to the payment of appellants' claim.

*Watkins & Watkins*, for appellants, filed an elaborate
brief covering all the points decided by the court contending that:

First. Repeals by implication are not favored.

Second.  In order that an implied repeal may result the repugnancy appearing in the two statutes must be wholly irreconcilable; and the repugnancy must be clear, convincing, and follow necessarily from the language used.  26 Amer. and Eng. Ency. Law, p. 725.

Third.  The repeal in any case will be measured by the extent of the conflict or inconsistency between the acts; and if any part of the earlier act can stand as not superceded or affected by the latter one, it will not be repealed.

Fourth.  It is only in rare instances that an affirmative statute repeals a previous affirmative statute, but in such cases it is usually considered that the latter statute is cumulative, rather than exclusive.  *Ins. Co.* v. *Mortimer,* 52 Kan. 784; Lewis and Sutherland on Statutory Construction.

Fifth.  While it is ordinarily true that where an act is passed purporting to deal with the entire subject-matter covered by an earlier act or acts, still, if the last enactment contains a provision repealing all acts or parts of acts inconsistent therewith, then the repeal extends only to those acts or parts of such acts clearly inconsistent and irreconcilable with the provisions of the repealing act, and only to the extent of the conflicting provision.  26 Amer. Ency. Law, p. 719, sec. 2303, of the acts of 1908; Section 9 of the acts of 1908; Section 12 of the acts of 1908; *Planters Bank of Mississippi* v. *State,* 6 Smedes & Marshall, p. 628; *White* v. *Johnson,* 23 Miss. 68; Section 94 of the acts of 1822; *Shelton* v. *Baldwin,* 26 Miss. 439; *Richards* v. *Patterson,* 30 Miss. 583; *Houss* v. *State,* 41 Miss. 737; *Raymond* v. *Fisher,* 45 Miss. 151; *Beard* v. *Leake County,* 51 Miss. 542; *Smith* v. *City of Vicksburg,* 54 Miss. 615; *Deaton* v. *Birchard,* 59 Miss. 144; *State* v. *Henry,* 87 Miss. 125; *Hearn* v. *Brogan,* 64 Miss. 334; *State* v. *Waldridge,* 41 Am. St. Rep. 663 (Mo.); *State* v. *Spencer,* 164 Mo. 48; *State* v. *Drexel,* 105 N. W. 174; *People* v. *Huntley,* 71 N. W. 178;

*People* v. *Van Pelt,* 90 N. W. 424; *Express Co.* v. *City of Lexington,* 83 Ky. 657; *John Conners* v. *Iron Co.,* 54 Mich. 156; *Holden* v. *Minnesota,* 34 Law. Ed. 735; *Simmons* v. *Bradley,* 27 Wis. 769; *Clay* v. *Allen,* 63 Miss. 426; *Kruse* v. *Kenneth,* 81 Ill. 199; *Jamison* v. *Walls,* 167 Ill. 388; *Pierce* v. *Foote,* 113 Ill. 228; *Exchange* v. *Mellon,* 27 Ill. App. 556; *Lester* v. *Buel,* 49 Ohio State 240; *McGraw* v. *Exchange,* 85 Tenn. 572; *Lemonius* v. *Mayer,* 71 Miss. 514; *Gray* v. *Robinson,* 95 Miss. 1; *Virden* v. *Murphy,* 78 Miss. 515; *Campbell* v. *Bank,* 74 Miss. 526; *Violet* v. *Margold,* 27 So. 875; *M. & O. Railroad Company* v. *Wimer,* 49 Miss. 738; 36 Cyc., p. 1079; *Swann* v. *Buck,* 40 Miss. 268; *Myers* v. *Marshall County,* 55 Miss. 347; *White* v. *Johnson,* 23 Miss. 68; 26 Cyc., p. 1236; *Thompson, Trustee,* v. *Bank,* 85 Miss. 261; *Railroad Company* v. *Adams,* 81 Miss. 90; *Edwards* v. *Lumber Co.,* 92 Miss. 568; *Gray* v. *Robinson,* 48 So. 226; *Sprague* v. *Warren,* 3 L. R. A. 679; *Bartlett* v. *Collins,* 83 Am. St. Rep. 932; *Barnard Backus case,* 52 Wis. 593; *Rogers* v. *Marriatt,* 59 Neb. 770; *Dows* v. *Glassbell,* 4 N. D. 261; *Mohr* v. *Miesen,* 47 Minn. 233; *Waite* v. *Frank,* 14 S. D. 634; *Edwards* v. *Hoeffinghoff,* 38 Fed. 639; *Pratt & Company* v. *Ashmore,* 224 Ill. 587; *Ware Commission Co.* v. *The People,* 209 Ill. 528; *Williams* v. *Majors,* 95 C. C. A. 187; *Purvis* v. *Williams,* 122 N. Y. Sup. 392; *Heard* v. *Taylor,* 181 N. Y. 233; *Seller* v. *Leiter,* 189 N. Y. 367; *Christie Grain case,* 198 U. S. 236; *Logan* v. *Telegraph Co.,* 157 Fed. 582; *Parker* v. *Moore,* 125 Fed. 807; *Board of Trade* v. *Kinsey,* 130 Fed. 512; *Cleage* v. *Ladley,* 149 Fed. 346; *Farnus* v. *Whitman,* 187 Miss. 381; *Ritcher* v. *Powe,* 71 Atl. 421; *Ward* v. *Vossburg,* 31 Fed. 13; *Bangs* v. *Hornick,* 30 Fed. 97; *Bailey* v. *Phillips,* 159 Fed. 535; *Richardson* v. *Shaw,* 52 Law. Ed. 840; *Booth* v. *Illinois,* 48 Law. Ed. 623; *Parker* v. *Otis,* 47 Law. Ed. 323; *Lacey* v. *Palmer,* 31 L. R. A. 822; *State* v. *Harboune,* 40 L. R. A. 607; *Bryan* v. *Telegraph Co.,* 157 Fed. 570; *State* v. *Clayton,* 138 N. C. 737.

*Green & Green*, for appellees, filed an elaborate brief too long for publication. Citing *Solomon* v. *Compress Co.,* 69 Miss. 326; *Wilkins* v. *Riley,* 47 Miss. 306; *Merrill* v. *Melchoir,* 30 Ib. 516; *Cowan* v. *Assurance Company,* 73 Miss. 328; *Charles Campbell* v. *Bank,* 74 Miss. 526; *Isaac* v. *Silverburg,* 87 Miss. 185; *Hulman* v. *Johnson,* Cowp. Rep. 343; *Dibbrell* v. *Danridge,* 51 Miss. 55; *Shattuck* v. *Miller,* 50 Miss. 386; *Insurance Co.* v. *State,* 86 Tex. (1893) 265; *Sullivan* v. *Ammons,* 48 So. 244; *State* v. *Fragiacoma,* 70 Miss. 802; *State* v. *Hill,* 70 Miss 110; *McBride* v. *State,* 70 Miss. 724; Sedgwick on Stat. and Const. Law 124; *Davies* v. *Fairbairn,* 3 How. U. S. R. 636; *Dexter and Limerick Plank Road Co.* v. *Allen,* 16 Bar. 15; *Mobile & Ohio R. R. Co.* v. *Weiner,* 49 Miss. 725; *Vicksburg* v. *Insurance Company,* 72 Miss. 70; *French* v. *State,* 52 Miss. 763; *Laramie County* v. *Albany County,* 92 U. S. 307; *Board of Supervisors of Sumner County,* 58 Miss. 619; Dill on Mun. Corp., section 126 *et seq.; Ellis* v. *Paige,* 1 Pick. (Mass.) 45; Sedgwick on Stat. Const. 366; *Deaton* v. *Burchart,* 59 Miss. 144; *Clay County* v. *Chickasaw County,* 64 Miss. ———; *Isaac* v. *Silverburg,* 87 Miss. 185; *Lienkauf Banking Co.* v. *Haney,* 93 Miss. 619; *Fellows* v. *Harris,* 12 Smed. & M., 462; *Hart* v. *Foundry Co.,* 72 Miss. 809, 17 South. 769; *Zeller* v. *Leiter,* 189 N. Y. 601; *Zeltner* v. *Irwin,* 25 N. Y. (App. Div.) 230; *Sondheim* v. *Gilbert,* 117 Ind. 78; *Gilden* v. *Blair,* 21 Wall. 241; *Wayne County Savings Bank* v. *Low,* 81 N. Y. 566; *Hawley* v. *Bibb,* 69 Ala. 52; *Stix* v. *Matthews,* 75 Mo. 961; *Swann* v. *Swann,* 21 Fed. Rep. 299; *Burns* v. *R. R. Co.,* 113 Ind. 169; *Flagg* v. *Baldwin,* 38 N. J. Eq. 219, 48 Am. Rep. 308; *Hyatt* v. *Bank,* 8 Bush. 193; *Milliken* v. *Pratt,* 125 Mass. 374; *Hull* v. *Spear,* 50 N. H. 253; *Champion* v. *Wilson,* 64 Ga. 184; *Gaylord* v. *Duryea,* 69 S. W. 607; *Postal Co.* v. *Lathrop,* 33 Ill. App. 402; *Berry* v. *Chase,* 146 Fed. 625; *Bease* v. *McLean,* 199 Mass. 243; *Sullivan* v. *Bank,* 70 Pac. 163; *Minzershemer* v. *Doolittle,* 54 Atl. 611; *Little-*

*ton* v. *Berlin Mills Co.*, 58 Atl. Rep. 877; *Lescallett* v.
*Commonwealth*, 89 Va. 878; *Scales* v. *State*, 81 S. W.
949; *Pearce* v. *Rice*, 142 U. S. 28, 40, 35 L. Ed. 925, 930,
12 Sup. Ct. Rep. 130, 135; *Pickering* v. *Cease*, 79 Ill.
328, 330; *Cothran* v. *Ellis*, 125 Ill. 496, 16 N. E. 646;
*Richardson* v. *Shaw*, 209 U. S. 365, 52 L. Ed. 835; *Hol-
comb* v. *Kemper*, 214 Ill. 458; *Hallet* v. *Aggergaard*, 114
N. W. 698; *Harvey* v. *Merrill*, 150 Mass. 1, 22 N. E. 49,
5 L. R. A. 200, 22 N. E. 49, 5 L. R. A. 200, 15 Am. St.
Rep. 159; *Tomblin* v. *Callen*, 69 Iowa 229, 28 N. W. 573;
*Zeller* v. *Leiter*, 99 N. Y. Sup. 624; *Boyle* v. *Henning*,
1212 Fed. 367; *Chicago Board of Trade* v. *Christie G.
and S. Co.*, 198 U. S. 249, 49 L. Ed. 1039; *Cleage* v. *Laid-
ley*, 149 Fed. 351; *Bearse* v. *McLean*, 199 Mass. 243;
*Hooper* v. *Mickles*, 39 South. Rep. 712; *Farnum* v. *Whit
man*, 187 Mass. 381; *Hacker* v. *Telegraph Co.*, 34 South.
902; *Ling* v. *Malcom*, 77 Conn. 517; *Western Union Tel.
Co.* v. *Bradford*, 114 S. W. 686; *Kingsburg* v. *Kirwan*,
77 N. Y. 612; *Miller* v. *Klovstad*, 105 N. W. 167; *Ponder*
v. *Jerome Hill Cotton Co.*, 100 Fed. 373, 40 C. C. A. 416;
*Clews* v. *Jamison*, 182 U. S. 461; *Barnes* v. *Smith*, 159
Mass. 344, 34 N. E. 403; *Board of Trade* v. *Kinsey*, 130
Fed. 507; *Thompson* v. *Williamson*, 58 Atl. 605; *Ken-
dall* v. *Fries*, 58 Atl. 1090; *Hacker* v. *Western Union
Tel. Co.*, 34 South. 902; *Drouilhet* v. *Pinkard*, 42 S. W.
136; *Boyd* v. *Hanson*, 41 Fed. 174; *Tel. Co.* v. *Little-
john*, 72 Miss. 1025; *Beidler & Robinson* v. *Coe Com-
mission Co.*, 13 N. D. 645; *Waite* v. *Frank*, 14 S. D.
633.

Argued orally by *W. H. Watkins*, for appellant, and
*Garner W. Green*, for appellee.

MCLEAN, J., delivered the opinion of the court.

Upon the very threshold of the discussion of the ques-
tions presented by this record, we express our unbounded
appreciation of the exceedingly able arguments, both

oral and printed, made and submitted by counsel for both appellants and appellees. These briefs and arguments have been of inestimable value, not only in diminishing the labors of this court, but in *simplifying* what. otherwise might be regarded as a difficult question.

The first question presented is whether chapter 118 of the Laws of 1908 repeals the provisions of the Code of 1906 relative to dealing in futures, and especially whether section 2303 of the Code is repealed. It may be profitable in the first place to refer to what may be regarded as the general rules or canons of construction relating to repeals. The act of 1908 does not contain any express repeal of any former laws, and consequently, if the Code provisions are repealed, they are repealed only by implication. In *McAfee* v. *Southern Railroad Company,* 36 Miss. 669; *Richards* v. *Patterson,* 30 Miss. 583, and *Southern Railroad Company* v. *City of Jackson,* 38 Miss. 334, the rule is laid down by this court that a repeal of a statute by implication is not favored in the law, and that where two statutes are seemingly repugnant they must be so construed, if possible, that the latter shall not be a repeal of the former by implication; and it was further said in *Commercial Bank of Natchez* v. *Chambers,* 8 Smedes & M. 9, that the two acts, seemingly inconsistent and repugnant, must be so construed, if possible, that both may stand and harmonize. See, also, *Ex parte McInnis,* 54 South. 260, where the authorities are collected and cited. The leading case in America upon this subject is the case of *Woods* v. *United States,* 16 Pet. 342, 10 L. Ed. 987, and one which, perhaps, has been followed more than any other authority. In that case the question arose whether the sixty-sixth section of the act of 1799 (Act March 2, 1799, ch. 22, 1 Stat. 677) had been repealed, or whether it remained in full force and effect. That eminent jurist, Mr. Justice Story, speaking for the entire court, says: "That it has not been expressly or by direct terms repealed is admitted;

and the question resolves itself into the more narrow inquiry whether it has been repealed by necessary implication. We say by necessary implication, for it is not sufficient to establish that subsequent laws cover some, or even all, of the cases provided for by it; for they may be merely affirmative, or cumulative or auxiliary. But there must be a postive repugnancy between the provisions of the new law and those of the old; and even then the old law is repealed by implication only, *pro tanto,* to the extent of the repugnancy."

The rule announced in *Wood* v. *United States, supra,* has been frequently reaffirmed by that court (see *Chew Heong* v. *United State,* 112 U. S. 549, 5 Sup. Ct. 255, 28 L. Ed. 770; *United States* v. *Mathews,* 173 U. S. 388, 19 Sup. Ct. 413, 43 L. Ed. 738, and *Red Rock* v. *Henry,* 106 U. S. 601, 1 Sup. Ct. 434, 27 L. Ed. 251), and generally by the various state courts. See 10 L. Ed. (Extra-Annotated Edition) 183; Note to *Wood* v. *United States,* 16 Pet. 342-366. Endlich on the Interpretation of Statutes, in considering this question, says, in section 210, that "it is a rule founded in reason, as well as in abundant authority, that, in order to give an act not covering the entire ground of an earlier one, nor clearly intended as a substitute for it, the effect of repealing it, the implication of an intention to repeal must necessarily flow from the language used, disclosing a repugnancy between its provisions and those of the earlier law, so positive as to be irreconcilable by any fair, strict, or liberal construction of it, which would, without destroying its evident intent and meaning, find for it a reasonable field of operation, preserving at the same time, the force of the earlier law, and construing both together in harmony with the whole course of legislation upon the subject." In 36 Cyc., p. 1073, the rule is thus laid down: "Where two legislative acts are repugnant to, or in conflict with, each other, the one last passed, being the latest expression of the legislative will, must govern,

although it contains no repealing clause. But it is not sufficient to establish such repeal that the subsequent law covers some or even all of the cases provided for by the prior statute, since it may be merely affirmative, or cumulative, or auxiliary. Between the two acts there must be plain, unavoidable, and irreconcilable repugnancy, and even then the old law is repealed by implication only *pro tanto,* to the extent of the repugnancy. If both acts can, by any reasonable construction, be construed together, both will be sustained. Two statutes are not repugnant to each other unless they relate to the same subject. Furthermore, it is necessary to the implication of a repeal that the objects of the two statutes be the same. If they are not, both statutes will stand, although they may refer to the same subject. When two statutes cover, in whole or in part, the same subject-matter, and are not absolutely irreconcilable, no purpose of repeal being clearly shown, the court, if possible, will give effect to both. Where, however, a later act covers the whole subject of earlier acts, and embraces new provisions, and plainly shows that it was intended, not only as a substitute for the earlier acts, but to cover the whole subject then considered by the legislature, and to prescribe the only rules in respect thereto, it operates as a repeal of all former statutes relating to such subject-matter, even if the former acts are not in all respects repugnant to the new act. But in order to effect such repeal by implication it must appear that the subsequent statute covered the whole subject-matter of the former one, and was intended as a substitute for it. If the later statute does not cover the entire field of the first, and fails to embrace within its terms a material portion of the first, it will not repeal so much of the first as is not included within its scope, but the two will be construed together, so far as the first still stands.''

If the inquiring mind desires to run out to his satisfaction, and if he will consult the numerous authorities

cited by this author in suport of the rule there announced, he will find that the rule is correctly and accurately stated as gleaned and gathered from these various authorities. In the celebrated case of *Great Northern Railroad Company* v. *United States,* 208 U. S. 452, 28 Sup. Ct. 313, 52 L. Ed. 567, a case of considerable importance, and one in which were engaged some of the brightest legal luminaries in this country, it was in substance announced by that eminent authority that "the rule that a later act covering the whole subject of a former act and embracing new provisions operates by implication to repeal the prior act is subject to the quali fication that where the later act expresses the extent to which it is intended to repeal prior laws, as by a clause repealing all laws in conflict therewith, it excludes any implication of a more extended repeal." With these primary, and we may add well-settled, canons of construction before us, it is believed that the solution of the question presented by this record is not a very difficult one. It is contended by learned counsel for the appellees that the act of 1908, not only repealed section 2303, but also sections 1201 and 1202, of the Code of 1906. Section 1201 of the Code condemns any dealing in contracts commonly called "futures," and makes it a misdemeanor so to do, and provides the punishment. Section 1202 condemns the buying or selling of commodities of any kind to be delivered at a future date, without agreeing or intending that the commodities are to be actually delivered in kind and the price paid, and declares the person so dealing to be guilty of a misdemeanor. Section 2303, which is found in the chapter relating to gambling contracts, provides that these future contracts shall not be enforced, and, further, that any person who shall make any such contract, and by reason thereof lose any money or other valuable thing, and shall pay or deliver the same, may, or his wife or children may, sue for and recover such money or other

valuable thing from the person knowingly receiving the same, either for himself or as agent for another.

Turning to chapter 118 of the acts of 1908, we find that the first section of that act deals exclusively with persons, either as principal, agent, broker, or intermediary, who establish, maintain, or operate an office or place of business in this state for the purpose of carrying on or engaging in the business forbidden in the act, commonly called "dealing in futures on margins;" and this section further provides that the person offending any of the provisions of that section is guilty of a misdemeanor, and, on conviction, shall be punished by a fine and imprisonment. This section evidently dealt alone and exclusively with what are known as "bucket shops," and places in this state maintained to receive orders for this class of business, and those persons who were engaged in the management or the conducting of this kind of business, either as principal or agent. Section 3 of said act makes it a misdemeanor for every person who shall become a party to any such contract or agreement as is by this act made unlawful, and every agent or officer of any corporation who shall in any way knowingly aid in making, furthering or effectuating any such contract or agreement, and provides that they shall be punished as provided in section 1 of the act. Section 2 of the act, which is the one especially relied upon by appellees as repealing section 2303 of the Code of 1906, is as follows: "That every contract or agreement, whether in writing or not, whereby any person or corporation shall agree to buy or sell and deliver, or sell with an agreement to deliver, any wheat, cotton, corn or other commodity, stock, bond or other security to any other person or corporation, when in fact it is not in god faith intended by the parties that an actual delivery of the article or thing shall be made, is hereby declared to be unlawful, whether made or to be performed wholly within this state, or partly within and partly

without this state; it being the intent of this act to prohibit any and all contracts or agreements for the purchase or sale of any commodities or thing of value on margin, commonly called 'dealing in futures,' when the intention or understanding of the parties is to receive or pay the difference between the agreed price and the market price at the time of settlement: Provided, that nothing herein contained shall be construed to apply to transaction by mail or wire, between persons in this state and persons outside of this state, where neither person is represented, directly or indirectly, in this state by any broker, agent, attorney or intermediary in said transaction.''

This suit was brought by the losers, who were the complainants in the court below. Ascher & Baxter, and therefore the question arises whether the complainants, under the laws of this state (this suit having been instituted on the 15th day of January, 1910, by the complainants filing in the chancery court of Hinds county, in this state, their bill of complaint against Edward Moyse & Co., the appellees), can bring this suit. The right to bring this suit is specifically given to the complainants under section 2303 of the Code of 1906; whereas, under section 9 of the act of 1908, the right to bring an action for a loss sustained in dealing in ''future contracts'' is given to the parent, wife, child or children, executor or administrator of, or the assignee of, the person sustaining the loss, and further gives the right of recovery in either the circuit or chancery court, and provides that ''the sum so lost shall be considered as liquidated damages to the person suing therefor from the broker, agent or intermediary who negotiated such transaction.'' It is a well-known fact, known to every person in the commercial and business world, that these exchanges where ''future contracts'' are dealt in, are established and found only in the larger cities of the United States, such, for instance, as in New York, Chi-

cago, and New Orleans. It is further known that the members of these exchanges have in almost every city in the United States agencies,. constituting the feeders of these exchanges, where the unwary are induced to engage and to embark in the dangerous, and always risky, business of getting rich quick. It is also. a matter well known to every business man in this state that in 1908, and for only a few years prior thereto, we had in this section of the country what was known as these agencies, representing the members of these exchanges and of these bucket shops, and the result was that the spirit of speculation became so rife and so general as to be absolutely demoralizing to the commercial interests of the country. One of the prime evils of latter days is the desire to get rich quick. One of the inherent characteristics of humanity is the spirit of speculation, and every attribute of our nature but swells and exasperates its infernal conflagration. The establishment of these bucket shops and means and methods of communication between the citizens of this state and the various exchanges throughout the country were but kindling wood to set ablaze this spirit of speculation. The evils attending these transactions becoming so numerous and flagrant, it became apparent to the legislature that some specific law should be enacted condemning and prohibiting the establishment and maintenance of these agencies of these exchanges and of these bucket shops; and therefor it was by reason thereof that the act of 1908 was enacted by the legislature of this state.

It has long since been the public policy of the state of Mississippi, not only to condemn contracts commonly known as "future contracts" by the enactment of the various laws specifically condemning these transactions and making it a misdemeanor to so engage therein, but, in addition thereto, as far back as 1892 made the dealing in futures a ground of attachment. The condemnation— indeed, the prohibition—of dealing in futures has be-

come a great public policy in this state. The withering, blighting curse of these speculations has lured the rich and the poor, the princely merchant and the impecunious clerk, the erstwhile honest and trusted employee. The cashiers of many banks, and not a few other fiduciaries, have become obsessed, and have lost honor, reputation, riches, and self-respect beneath its witcheries. The dealing in futures is the begetter of poverty, the companion of embezzlement, the associate of degradation, and it scourges every one whom it touches. Its thirst is unquenchable; its maw insatiable. Its baneful influences have become so destructive to the legitimate business interests of the country, and especially to the cotton planter and to the wheat grower, that for many years there has gone up, and there still continues to go up, a cry to the national congress beseeching that body for the passage of an act prohibiting the making of such contracts and the suppression of the exchanges throughout the states. So far, the "shearers of the lambs, the sellers of doves, and the money changers have desecrated the temple," and the petitions of the people have been cast aside, ungranted. Such is the mischief.

In the Code of 1880, and prior thereto, we had no statutory law specifically condemning by name the making of contracts commonly known as futures. The only statutory law relative to this matter up to that time was the statute against gambling (Code 1880, section 990), and this court, in *Campbell* v. *National Bank,* 74 Miss. 526, 21 South. 400, 23 South. 25, construed this statute relating to "any wager whatever," and held that dealing in futures was a gamble or a wager, and that a judgment rendered upon a note given to reimburse the payees of the note for money paid on these future dealings was illegal and void, affirming the doctrine announced in *Clay* v. *Allen,* 63 Miss. 426, to-wit: "Such a proceeding is a wager, and as such void only when the real intent of the parties is to speculate in the rise and fall of prices,

and the goods are not to be delivered, and one party is to pay the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract.''

In 1882 the legislature, for the first time, enacted a law (Laws 1882, ch. 117) specially directed against these future contracts, and this act of 1882 first passed under review of this court in *Lemonius* v. *Mayer*, 71 Miss. 514, 14 South. 33. This court in the last-named case held that the act of 1882, not having been brought forward in the Code of 1892, was thereby repealed. In *Isaacs* v. *Silverberg*, 87 Miss. 185, 39 South. 420, it was held that under section 2116 of the Code of 1892, which provides that money lost at gambling may be sued for and recovered by the loser, had no relation to contracts for the buying of futures, which are made invalid by section 2117 of the Code of 1892, and which was the law of 1882. This opinion in *Isaacs* v. *Silverberg*, which was delivered in November, 1905, was evidently a very great surprise to the legislative department of this state, for the reason that it brought forth a vigorous protest from the legislature, which convened only a few months subsequent to the delivery of this opinion, as is evidenced by the enactments of the provisions of the Code of 1906 relating to these transactions. It must be presumed, not only that the legislature was familiar with its own enactments and with the constructions which this court had placed upon those enactments, but also conversant with the rulings of this court; and it is perfectly manifest from the opinions of this court that the well-settled public policy of this state was the condemnation and the prohibition of dealings in contracts commonly called ''futures.'' *Clay* v. *Allen*, 63 Miss. 426; *Campbell* v. *National Bank*, 74 Miss. 526, 21 South. 400, 23 South. 25; *Gray* v. *Robinson*, 95 Miss. 1, 48 South. 226. In the last-named case this court reaffirms the principle announced in *Campbell* v. *National Bank*, 74 Miss. 526, 21

South. 400, 23 South. 25, to the effect that "a contract for the payment of differencies in prices arising out of the rise and fall in the market price above or below the contract prices is a wager on the future price of the commodity, and is therefore invalid." The suit in *Gray* v. *Robinson*; was upon a promissory note made payable to bearer, and brought by a *bona fide* holder for value without notice, and this court very properly held that the maker was not liable, for the reason that the consideration of the note was given for moneys lost in "future dealings."

In this connection we refer to the opinion of the court in *Campbell* v. *Bank*, 74 Miss. 530, 23 South. 25, delivered in response to the suggestion of error. It was urged in that case that section 990 of the Code of 1880 was repealed by the act of 1882, in so far as dealings in futures were embraced in that section of the Code. But in response to the suggestion of error this court said that there is not the slightest reference in the act of 1882 to section 990 of that Code, and that repeals by implication are not favored. The repeal by implication, says the court, "must clearly appear in the supposed repealing act, and we fail to find any purpose to repeal any former law by the act of 1882; rather, it appears to have been the intention of the legislature, by enacting the statute of 1882, to enlarge the existing law. The court then says that future contracts are already nonforfeitable under section 990 of the Code, as per the interpretation placed thereon in *Clay* v. *Allen, supra,* and that the second section of the act of 1882, so far as concerns future contracts made in this state, were idle, and added nothing to the law in force, neither did it, as to such contracts, take anything from that law." Section 2 of the act of 1908 provides that "nothing herein contained shall be construed to apply to transactions by mail or wire between persons in and those outside of the state where neither is represented in the state." It there-

fore follows that, if the act of 1908 repeals all former laws upon this subject, we have no law condemning these contracts as specified in the Code of 1906; and, conse-. quently, the courts of this state would be open for the enforcement of these contracts wherever made, provided they were lawful where made. It is true that an act of the legislature can have no extraterritorial force, and therefore can neither make unlawful a contract entered into upon the soil of another state nor subject a party thereto to punishment, yet at the same time, in view of the well-settled public policy of this state, in contemplation of the growing and increasing evils of the traffic, both financial and moral, it is unthinkable to believe that the legislature intended that the courts of this state should be thrown wide open, wherein the contracting parties should be given redress for the enforcement of such contracts when made outside of this state. There surely has been no change in the public policy upon this question, and certainly no developments in recent years which in the least commends this class or kind of dealing to the encouragement of either legislative or judicial bodies.

Under section 9, p. 123, of the acts of 1908, the parent, wife, child, executor, or administrator of the person sustaining a loss, or the assignee of any such person so losing, may recover by suit the amount so lost from the broker, agent, or intermediary who negotiated such transaction. It will be observed that the transaction must have been made in this state, as is provided by this act, and that only the broker, agent, or intermediary is liable for the amount so lost. The principal— the party receiving for himself—is omitted. Under section 2303, the loser, his wife, or child can recover only from the person knowingly receiving the same, either for himself or as agent for another. The fact that the principal is exempted from suit by the latter act is an unanswerable declaration that the purpose was not to

repeal section 2303 of the Code, for by that section he is expressly made liable. No such injustice or absurdity can be attributable to the legislature as to say that it would make the broker, agent, or intermediary liable, and at the same time relieve the principal from liability. The proper construction of the act of 1908 is to say that the legislature did not intend to deal with the whole subject-matter relating to "futures;" but the whole act clearly shows that the purpose was to prohibit the establishment of "bucket shops" and places in this state where these unlawful contracts could be made and entered into. Such being the case, it left in full force and vigor the provisions of section 2303. We therefore say there is no irreconcilable inconsistency between the two statutes. The seeming repugnancy vanishes upon an analytical examination, and the two can stand without eating away or destroying the salutary effect of the other. It is not at all necessary, in order to make these two statutes stand, to obey the positive injunction of the latter act "that it is remedial and should be liberally construed."

We note specially that the act of 1908 provides that "all laws or parts of laws in conflict with this act be and the same are hereby repealed." This is a positive, unequivocal declaration that only such laws as are in conflict with the act are repealed, and is equivalent to saying that all former laws upon the subject must remain unrepealed, unless the latter act is irreconcilable with the former law and comes under the rule announced in *Great Northern R. R. Co.* v. *United States, supra,* that when the latter act covers the whole subject of a former act, and, embracing new provisions, operates by implication to repeal the prior act, is subject to the qualification that, where the latter act expresses the extent to which it is intended to repeal prior laws, it excludes any implication of a more extended repeal. This necessarily must be true when the right to sue is given in the

two acts to a different class of persons. To say that the latter act gives the right to sue to the parent, wife, child, personal representative, or assignee of the person sustaining the loss is not irreconcilable with section 2303 of the Code, giving the right to recover to the loser, his wife or child.

It is urged that the purpose of the legislature was to prohibit the dealings in futures, and that to give the right to the loser to sue for and recover his losses would not tend to the suppression, but rather to the encouragement, of these dealings upon the part of the loser, upon the principle that "heads I win, and tails you lose." This is persuasive; but is not the purpose of the statute made more effective in prohibiting any person from receiving or collecting any money as margins for these transactions with the knowledge that he is liable to be sued for the recovery of the money lost? It is an effort upon the part of the legislature to commercially "leprosize" the gamblers of Mississippi—those who deal in futures.

It also may be insisted that the proviso of section 2 of the act of 1908, exempting from the condemnation of the act those transactions conducted and carried on through the medium of the mail or telegraph between persons in the state and persons outside of this state, was for the protection and in the interest of the local spot cotton buyer, who protects his sales and purchases by transactions upon the future board. We confess that we see very little force in this suggestion. We fail to appreciate the spirit which encourages the doing of an act in one and prohibits it in another class of persons. The purpose was to suppress the traffic as to all persons, to shut out entirely the evil, and the more reasonable construction to place upon this portion of the act is to say that it was inserted by the legislature upon the erroneous idea that the insertion of such a provision was necessary to preserve the constitutionality of the act.

In view of the rulings of the lower court, we cannot consider the merits of this controversy. The lower court declined to enter into a consideration of the merits, but dismissed the bill solely upon the ground that the complainants did not have the right to sue, upon the idea that the provisions of the Code of 1906 were repealed by the act of 1908. This court is strictly a court of review, and it is only in rare instances where the court will consider the merits of any controversy, unless passed upon in the lower court. *Thompson* v. *Bank*, 85 Miss. 261, 37 South. 645; *Edwards* v. *Lumber Co.*, 92 Miss. 598, 46 South. 69. A moment's reflection will at once demonstrate the soundness of this rule. The parties to any litigation have the right to have matters of fact submitted to and passed upon by the jury or the chancellor, in whatever forum the cause is being tried, and the finding of facts in the court below by the proper authority will not be disturbed in this court unless it is manifestly wrong. The opportunities afforded to the lower court are so much better for the correct conclusions and findings upon all questions of fact than is this court. Here we have nothing but the naked record before us; there, in most cases, the parties themselves are in the presence of the court and testifying. The manner of testifying, and their appearance upon the witness stand, and many other things, are influential in determining the triers of fact.

*Reversed and remanded.*

SMITH, J. (dissenting).

I am of the opinion that the act of 1908 "covers the whole subject of the earlier" laws relating to dealing in futures, "embraces new provisions, and plainly shows that it was intended, not only as a substitute for the earlier laws, but to cover the whole subject then considered by the legislature, and to prescribe the only rules in respect thereto," and that, consequently, "it

operates as a repeal of all former statutes relating to the subject.''

I feel constrained, therefore, to dissent from the conclusion reached by my brethren.