BURGSON & Co. v. WILLIAMS, SMITHWICK & Co.

(Division B. April 15, 1929.)

[121 So. 817. No. 27835.]

Gardner, **O**dom & Gardner, of Greenwood, for appellant.

Knox Lamb, of Greenwood, for appellee.

**Anderson, J.,** delivered the opinion of the court.

The appellees brought this action against appellants in the county court of Leflore county on a promissory note to recover the sum of three hundred fifty dollars and interest, which note appellants had before the bringing of the suit executed and delivered to appellees. Appellee's declaration was in the usual form, alleging the execution and delivery of the note sued on by appellants to appellees, and default in its payment. To the declaration appellants interposed two special pleas, to which appellees demurred, which demurrer was by the court overruled, and appellants declining to plead further, judgment final was rendered against appellants in favor of appellees for the amount sued for, with interest. From that judgment appellants appealed to the circuit court of Leflore county, where the judgment of the county court was affirmed; and from the judgment of the circuit court this appeal is prosecuted.

The case made by the pleadings is substantially as follows: On the 24th day of December, 1925, appellees purchased from appellants fifty bales of cotton, for which they paid appellee in cash at the prevailing market price on that date, and the fifty bales of cotton were actually delivered to the appellees, appellants retaining no control whatsoever over the cotton after its purchase and delivery. But at the time of the sale of the cotton it was agreed between the parties that the amount paid on that date for the cotton was not the final price to be paid therefor; the final price was to be fixed between the parties in the following manner: At any time between the 1st and 25th of December, 1925, either party to the transaction should have the right to call the price, based on New York cotton quotations on the day of the call, of the same grade of cotton, plus seventy-five points as a premium for the staple. In pursuance of that agree-

ment, on the 14th day of December, 1925, appellees called the price, and according to the agreement, the price of cotton at that time was one thousand thirty-nine dollars and fifteen cents less than the amount paid by appellees to appellants at the time of the purchase and delivery of the cotton; the result being, under the agreement, that appellants were due to pay back to appellees that amount. Thereupon, in final settlement of the transaction, appellants paid to appellees six hundred seventy-. five dollars and fifty-three cents in cash, and executed their note for the balance to be paid at a future date, which note is the basis of this action.

Appellants' defense was that the note sued on was illegal and void because the consideration therefor grew out of gambling and future transactions between appellants and appellees, in violation of the statutes of this state. The fact relied on by appellants to sustain that position was the manner in which the final price of cotton was to be fixed, as above set out. The appellants, by way of set-off and counterclaim, sought to recover over against appellees the sum of six hundred seventy-five dollars and fifty-three cents, which sum appellants, as stated, had paid to appellees after the price of the cotton had been called. Appellees' demurrer to the special plea necessarily disposed of the counterclaim adversely to the appellants.

The gambling statute relied on by appellants is in this language (section 2300, Code of 1906; section 2031, Hem. 1927 Code): "Contracts, judgments, securities, conveyances made, given, granted, or executed, where the whole or any part of the consideration or foundation thereof shall be for money, or any valuable thing won, lost, or bet at any game or games, or on any horse-race, cockfight, or at any other sport, amusement, or pastime, or on any wager whatever, or for the reimbursing or repaying any money knowingly lent or advanced for the

purpose of such gaming or gambling, or to be wagered on any game, play, horse-race, cock-fight, or on any sport, amusement, pastime, or wager, shall be utterly void.''

The futures statute, also relied on by appellants, being section 2303, Code of 1906 (section 2034, Hemingway's Code of 1927), is as follows: ''A contract for the purchase or sale of a commodity of any kind, to be delivered at a future date, the parties not intending that the commodity is to be actually delivered in kind and the price paid, shall not be enforced by any court; nor shall any contract of the kind commonly called 'futures' be enforced, nor shall a contract in this section mentioned be a valid consideration, in whole or in part, for any promise or undertaking, and any person who shall make any such contract and by reason thereof lose any money, property or other valuable thing, real or personal, and shall pay or deliver the same or any part thereof, may, or his wife or children may sue for and recover such money, property or other valuable thing so lost and paid or delivered, or any part thereof, from the person knowingly receiving the same, either for himself or as agent for another, together with all costs of suit.''

Putting the case in a shorter way, it is simply this: Appellants and appellees were cotton merchants. On the 24th day of December, 1925, appellants had fifty bales of cotton which appellees desired to purchase. Appellants were unwilling to sell the cotton to appellees at the prevailing price on that day, but preferred to hold the cotton for December prices. It suited appellees also to run the risk of December prices. In other words, appellants thought the December prices would probably be higher than the prices then prevailing, while appellees thought they would probably be lower. So they agreed to settle the price to be paid in the manner above stated.

Does either the gambling statute or the futures statute render such a contract illegal and void? We think not.

The cotton was actually delivered by appellants to appellees; the absolute title to the cotton passed from the appellants to the appellee; the only thing left open for future adjustment was the price. The price of a commodity sold need not be definitely fixed at the time of the sale, provided the contract of sale contains an express or implied provision by which the price may be rendered certain in the future. 23 R. C. L., pp. 1277, 1278, section 94. The price may be left open, to be fixed in a manner to be agreed on in the contract of sale, as by the market price of the commodity at a certain time and place. 35 Cyc. 48, "Sales." An instrument fixing the purchase price of land, providing that the vendee should pay the vendor nine hundred dollars if cotton should rise to eight cents by a certain time, and if not to pay five hundred dollars, is not a wager on the price of cotton. Ferguson v. Coleman, 3 Rich. (S. C.) 45 Am. Dec. 761. The cotton futures decisions of the supreme court, relied on by appellants as sustaining their position, were all cases involving transactions where there was neither actual delivery nor intention to deliver the commodity sold. The contracts involved contemplated payments of the differences in prices growing out of the rise and fall of the market price of the commodity above or below the contract price. Ascher & Baxter v. Moyse & Co., 101 Miss. 36, 57 So. 299; Weld & Co. v. Austin, 107 Miss. 279, 65 So. 247; Cohn v. Brinson, 112 Miss. 348, 73 So. 59; Ann. Cas. 1918E, 134, and Gray v. Robinson, 95 Miss. 1, 48 So. 226, are the cases principally relied on by appellants. They do not sustain appellants' contention.

On the affirmance of the case on appeal from the county court to the circuit court, the latter court allowed appellees five per cent. damages on the amount of the judgment of the county court. This action of the circuit court is assigned as error. There is no statute authorizing the allowance, and we know of no common-law principle up-

on which it could be based. This action of the court was therefore error.

The result of these views is that the judgment of the court below is reversed to the extent that the judgment shall be reduced in so far as the five per cent. damages allowed by the circuit court is concerned. In all other respects the judgment will be affirmed, and final judgment entered here.

Reversed in part, and affirmed in part.